UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABB INC.,

       Plaintiff,

  v.

ROBOTIC VISIONTECH, LLC,
BRAINTECH, INC., and BRAINTECH
CANADA, INC.

       Defendants.

Case No.

SOMMERS SCHWARTZ, P.C.
BY:   KEVIN J. STOOPS, (P-64371)
Attorney for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan  48075
(248) 355-0300 – telephone
(248) 936-2143 - facsimile
kstoops@sommerspc.com

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**NOW COMES** Plaintiff ABB Inc. ("ABB"), by and through its attorneys, SOMMERS SCHWARTZ, P.C., and for its Complaint against Defendants, Robotic Vision Tech LLC ("RVT"); Braintech, Inc. ("Braintech"); and Braintech Canada, Inc. ("Braintech Canada") (collectively referred to as "Defendants"), states as follows:

**PARTIES**

1.    ABB is a Delaware corporation with its principal office in Raleigh, North Carolina.  ABB, among other things, manufactures, services and repairs electrical automation equipment, including robots and other control devices.

2.	Upon information and belief, Defendant RVT is a Nevada limited liability company, with its principal place of business in Great Falls, Virginia. Upon information and belief, RVT was formed by F.W. "Rick" Weindinger ("Weindinger") after Weindinger and others purchased the assets of Braintech at a private foreclosure sale. Weindinger is, upon information and belief, a former officer and/or owner of Braintech.

3.	Upon information and belief, Defendant Braintech is a Virginia company that, while still listed as active on the Virginia Secretary of State website, is essentially defunct and does not maintain a principal place of business. Upon information and belief, Braintech's last principal place of business was in McLean, Virginia.

4.	Upon information and belief, Braintech Canada is or was a Canadian corporation that has or had its principal office in Vancouver, Canada. However, as of June 21, 2010, Braintech Canada's website lists the McLean, Virginia address as the address for "Braintech" and, upon information and belief, it appears Braintech Canada may have been acquired by or otherwise merged into Braintech.

5.	Upon information and belief, Defendants RVT, Braintech and Braintech Canada were and are operated as a single entity by Weindinger and others, without respect to the corporate form. Each is, essentially, the alter ego of the other and each is legally responsible for the acts and omissions of the other.

**JURISDICTION AND VENUE**

6.	This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, due to the complete diversity of citizenship between the parties, and because the matter in controversy exceeds $75,000 exclusive of interest and costs.

7. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201, and under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and § 1338, and has supplemental jurisdiction over the state-law claims asserted by ABB pursuant to 28 U.S.C. § 1367 as they form part of the same case or controversy.

8. This Court has personal jurisdiction over Braintech, Braintech Canada and RVT for the following reasons. Braintech and Braintech Canada both engaged in continuous and systematic contacts with the state of Michigan. Braintech and Braintech Canada maintain or maintained a "technical laboratory" in Pontiac, Michigan that housed the ABB robots that are part of the subject of this action. RVT, as the successor-in-interest and alter ego of Braintech and Braintech Canada, now maintains that same place of business, which has apparently moved to Sterling Heights, Michigan. Braintech and Braintech Canada derived all or almost all of their revenue from contracting with ABB's Robotics Division located in Auburn Hills, Michigan. Braintech and Braintech Canada had continuous and systematic contacts with that ABB facility, and the state of Michigan, over at least the last four (4) years. Thus, this Court has general personal jurisdiction over both Braintech entities and RVT for purposes of this, and other, matters.

9. Moreover, both Braintech entities and RVT have directed their conduct at the state of Michigan, and purposefully availed themselves of the forum state. Both Braintech entities had a long-standing commercial relationship with ABB that required significant communication and work with ABB's Auburn Hills facility. Moreover,

3

Defendant RVT and its principals have been engaged in significant activity in Michigan since acquiring Braintech's assets in May of 2010. RVT personnel (who consist, upon information and belief, primarily if not exclusively of former Braintech officers, directors and owners) have moved ABB's robots (the subject of ABB's conversion action below) out of Braintech's Pontiac, Michigan facility without ABB's consent. RVT personnel have contacted Pepper Hamilton LLP's ("Pepper Hamilton") office in Michigan, requesting that Pepper Hamilton improperly break an escrow and release the software code and executables that are the subject of ABB's declaratory judgment action below to RVT. Thus, the exercise of specific personal jurisdiction over the two Braintech entities, and RVT, is fundamentally fair.

10. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to this action took place in this judicial district.

**FACTS**

11. On or about May 5, 2006, Defendant Braintech Canada entered into an "Exclusive Global Channel Partner Equipment" with ABB (the "Agreement"). (The Agreement is confidential and will be provided upon entry of an appropriate Protective Order). Via the terms of the Agreement, ABB agreed to license at great expense certain of Braintech's vision guided robotics technologies.

12. Upon information and belief, and based on Braintech's filings with the Securities and Exchange Commission, ABB payments for these licenses constituted all or nearly all of Braintech's revenue over the last several years. All told, ABB spent

4

approximately $8,000,000 under the Agreement for approximately 600 software licenses.

13. In return for its significant commercial commitment to Braintech, the Agreement specifically gave ABB the right to have access to the software code and executables for the software ABB licensed under the Agreement. Per paragraphs 27.1 through 27.3 of the Agreement, ABB's right to access the code and executables extended even beyond the term of the Agreement and/or any Braintech insolvency. Specifically, the parties agreed that ABB would have a right to "use the BRAINTECH software in executable and where necessary code form" for purposes of supporting systems ABB had installed with its customers. This is a standard provision in software license agreements, giving ABB the right to access the code and executables in order to service its customers in the event of a Braintech insolvency.

14. The parties effectuated this provision via, essentially, an escrow arrangement, with the code and executables first being held at the Law Offices of Clark Wilson in Vancouver, Canada.

15. Sometime during the course of the Agreement, as stated by Thomas McCabe (the Executive Vice President, General Counsel and Secretary of Braintech) in a letter to James D. VandeWyngearde, Esq. of Pepper Hamilton in Detroit, Michigan dated April 27, 2009, Braintech moved to Virginia. After the move, Braintech deposited the escrowed software code and executables with the Greenberg Traurig law firm in McLean, Virginia. The terms of this letter make it clear that Braintech and Braintech Canada were essentially acting as a single entity, and that it was Braintech who was setting up the escrow in Michigan for the benefit of ABB.

5

16. On February 24, 2009, Braintech and ABB entered into a Letter of Commercial Clarifications (the "Letter Agreement") designed to (a) reaffirm the existence and continued validity of the Agreement and (b) settle certain disputes that had arisen as to the meaning of some of the terms in the Agreement, and clarify the ongoing contractual obligations of the parties. (The Letter Agreement is confidential and will be provided upon entry of an appropriate Protective Order). In paragraph 5 of the Letter Agreement, Braintech reaffirmed the escrow arrangement in the Agreement, and agreed to additional terms allowing ABB the right to perform certain inspections related to the software code and executables.

17. The escrow then moved one additional time on April 27, 2009. On that date, as referenced above, Braintech's General Counsel Thomas McCabe wrote to Jay VandeWyngearde of Pepper Hamilton, referenced Section 27 of the original Agreement, and stated that "in deference to ABB's Detroit area location, Braintech sends you the Escrow in its most current updated form."

18. The code and executables remain in escrow with Pepper Hamilton at this point in time.

19. Shortly thereafter, on July 1, 2009, ABB and Braintech entered into another agreement entitled the "Equipment Loan Agreement" (the "Equipment Loan") by which ABB loaned an IRB 6600 IRC5 Robot and controller with the serial number 66-52030 and IRB140 S4C+ Robot and controller with the serial number 14-11506 to Braintech (the "Robots"). (The Equipment Loan is confidential and will be provided upon entry of an appropriate Protective Order). Braintech was to use the two robots to improve its eVF software platform, and for that purpose only. The Robots, pursuant to

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

6

Section 4 of the Equipment Loan, were not to be moved from Braintech's Pontiac, Michigan location without ABB's consent.

20. Pursuant to Section 5 of the Equipment Loan, ABB retained all title and ownership in the Robots.

21. Sometime in the spring of 2010, as Braintech's financial fortunes declined, certain Braintech and/or RVT personnel attempted to improperly obtain release of the code and executables from Pepper Hamilton without ABB's consent.

22. Moreover, upon information and belief, Braintech's senior management purchased the security interest held by Braintech's lender(s) and then conducted a private auction sale in Virginia in late May of 2010 by which they and/or RVT acquired Braintech's assets.

23. Since that time, counsel for ABB has been in contact with at least three (3) different lawyers who claimed to or did in fact represent Braintech and/or RVT. These discussions focused on (a) ensuring ABB's continuing access to the software code and executables and (b) obtaining the return of the Robots.

24. After some initial discussions in mid to late June of 2010 between counsel for ABB and for RVT and Braintech, and between RTV's business principals and ABB's, RTV and Braintech simply stopped all communications for several weeks.

25. In June of 2010, ABB is informed and believes that RVT and Braintech moved the Robots from Braintech's former Pontiac, Michigan facility without ABB's consent. Counsel for ABB has demanded a return of the Robots from counsel for RVT/Braintech. While counsel for RVT and Braintech has informed ABB generally as to the whereabouts of the Robots (they are apparently in the Sterling Heights area), no

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

specifics have been provided as to their location and when or where ABB can retrieve them.

26. RVT/Braintech is therefore in unlawful possession of ABB's Robots.

**COUNT ONE – COMMON LAW CONVERSION AGAINST ALL DEFENDANTS**

27. ABB realleges and incorporates by reference paragraphs 1 through 26.

28. ABB is the sole owner of the Robots. ABB loaned the Robots to RVT/Braintech pursuant to an Equipment Loan Agreement that clearly stated (a) ABB retained ownership over the Robots and (b) that RVT/Braintech was not to move the Robots without ABB's consent.

29. ABB has terminated the Equipment Loan Agreement, and demanded return of the Robots from RVT/Braintech. RVT/Braintech has failed to respond to that demand and has not returned the Robots. Thus, RVT, Braintech, and/or Braintech Canada are exercising improper dominion and control over the Robots.

30. By failing to return them upon proper demand, RVT, Braintech and Braintech Canada have intentionally and willfully converted the Robots to their own use and ownership.

31. As a direct and proximate result of Defendants' wrongful and illegal conversion of the Robots, ABB has suffered actual damages, including but not limited to, the value of the Robots.

**COUNT TWO – STATUORY CONVERSION, MCL § 600.2919a,
AGAINST ALL DEFENDANTS**

32. ABB realleges and incorporates by reference paragraphs 1 through 31.

33. ABB is the sole owner of the Robots. ABB loaned the Robots to RVT/Braintech pursuant to an Equipment Loan Agreement that clearly stated (a) ABB

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

retained ownership over the Robots and (b) that RVT/Braintech was not to move the Robots without ABB's consent.

34. ABB has terminated the Equipment Loan Agreement, and demanded return of the Robots from RVT/Braintech. RVT/Braintech has failed to respond to that demand and has not returned the Robots. Thus, RVT, Braintech, and/or Braintech Canada are exercising improper dominion and control over the Robots.

35. By failing to return them upon proper demand, RVT, Braintech and Braintech Canada have intentionally and willfully converted the Robots to their own use and ownership.

36. As a direct and proximate result of Defendants' wrongful and illegal conversion of the Robots, ABB has suffered actual damages, including but not limited to, the value of the Robots.

### COUNT THREE – CLAIM AND DELIVERY, MCL § 600.2920, AGAINST ALL DEFENDANTS

37. ABB realleges and incorporates by reference paragraphs 1 through 36.

38. ABB is lawfully entitled to possession of the Robots.

39. The Robots consist of goods that are independent pieces of property.

40. ABB is the sole owner of the Robots.

41. Defendants have failed to pay ABB the market value of the Robots and have refused to return the Robots to ABB.

42. ABB seeks possession of the Robots that Defendants have unlawfully detained.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

### COUNT FOUR – DECLARATORY JUDGMENT, 28 U.S.C. § 2201(a), AGAINST ALL DEFENDANTS

43. ABB realleges and incorporates by reference paragraph 1 through 42.

44. The terms of the Agreement set up an escrow of Braintech's software code and executables and guaranteed ABB such access and use of the code and executables necessary for ABB to service its vision guided robotics customers.

45. Braintech, Braintech Canada and RTV have refused ABB access to the code and executables, and have improperly asked the escrow agent, Pepper Hamilton, to return the code to them.

46. Thus, there is an actual, justiciable controversy between ABB, Braintech, Braintech Canada and RVT as to their respective rights under the Agreement and the Letter Agreement to the escrowed code and executables.

47. The controversy is genuine as ABB has demanded access to the code and executables and has been denied that access. RVT has improperly conditioned the right of access on the entrance of ABB into an as yet undefined "business relationship" with ABB.

48. This controversy should be resolved and may be resolved under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and ABB requests that this controversy be resolved by way of a declaratory judgment.

### COUNT FIVE – IMPOSITION OF EQUITABLE AND/OR CONSTRUCTIVE TRUST, AGAINST ALL DEFENDANTS

49. ABB realleges and incorporates by reference paragraphs 1 through 48.

50. ABB invested large sums of money in Braintech, and Braintech Canada.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

10

51. ABB served as, essentially, Braintech's and Braintech Canada's sole customer for many years.

52. Using that investment, Braintech and Braintech Canada developed software for use to ABB in servicing its customers. As set forth in the Agreement and the Letter Agreement, Braintech and/or Braintech Canada was to place that software code and executables in escrow for use by ABB in servicing ABB's customers should Braintech and/or Braintech Canada become insolvent.

53. Braintech and/or Braintech Canada are now insolvent, and their assets – including technical title to and ownership of the code and executables – have been, upon information and belief, purchased by Weindinger and other former officers of Braintech and/or Braintech Canada. Weindinger did so via a private auction sale designed to strip the assets of Braintech and/or Braintech Canada of any attached liabilities. Weindinger then, upon information and belief, set up RVT to own and operate the assets of Braintech and/or Braintech Canada.

54. Given the above, and the fact that ABB for all intents and purposes paid for the development of the escrowed code and executables, it would be fundamentally unfair and constitute unjust enrichment for RVT to retain title to the code and executables. RVT, via the actions of Weindinger, has acted in such a way as to make its continued ownership of the code and executables unconscionable. In fact, RVT and Weindinger are using the code and executables (paid for by ABB) as leverage to force ABB to enter into an undefined "business relationship" with RVT.

55. ABB therefore contends that it has a constructive and/or equitable trust over the code and the executables, and that ownership of them should be transferred to ABB.

**COUNT SIX – TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114, AGAINST DEFENDANTS RTV AND BRAINTECH CANADA**

56. ABB realleges and incorporates by reference paragraphs 1 through 55.

57. ABB's applicable marks are as follows:  (a) ABB, US Registration No. 76385320; (b) ABB, US Registration No. 76385322; (c) ABB, US Registration No. 76385319; (d) ABB, US Registration No.  75208225; (e) ABB, US Registration No. 74498063; (f) ABB, US Registration No. 74165392; and (g) ABB, US Registration No. 73728906.  ABB refers to these marks collectively as the "ABB Marks" or the "Marks."

58. The ABB Marks embody the goodwill and business reputation of ABB's power automation, transmission, distribution and robotics businesses (among others).  ABB operates businesses employing these marks in a multitude of locations both domestic and abroad.

59. ABB has expended substantial resources developing and maintaining substantial secondary meaning in each of the ABB Marks, ensuring that the ABB Marks serve as unique identifiers of ABB's various businesses.  ABB has done so by displaying the Marks in connection with ABB's goods and services on ABB's products, on its webpages, on its materials and literature and on its advertisements.  The red ABB logo depicted in those formats is famous worldwide and is associated only with ABB.  Customers, as a result, associate the ABB Marks with ABB, and the Marks are a valuable corporate asset.

60. ABB has used the Marks in question for at least as long as the dates set forth in the registrations.

61. The ABB Marks are valid marks entitled to protection and have received registration with the USPTO. Moreover, they are strong marks that have acquired substantial secondary meaning.

62. RTV and Braintech Canada have used, and continue to use, the ABB Marks on, at a minimum, their websites to capitalize on the ABB Marks and their reputation in order to attract customers. At various times, the RTV website has claimed (erroneously) that RTV is in "partnership" with ABB, and the websites of RTV and Braintech Canada have displayed various images of the ABB Marks, again all in an effort to attract customers.

63. RTV's and Braintech Canada's use of the ABB Marks is willful and deliberate and with an intent to reap the benefit of ABB's goodwill.

64. RTV's and Braintech Canada's use of the ABB Marks has caused or is likely to cause confusion with the public about whether ABB has authorized or endorsed RTV's and Braintech Canada's business operations, and whether or not ABB is affiliated with RTV or Braintech Canada.

65. RTV's and Braintech Canada's unauthorized continued use of the ABB Marks without the authorization of ABB infringes ABB's exclusive rights in its federally registered trademarks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), in that the public is likely to be confused, deceived or mistaken regarding the source or sponsorship of RTV's and Braintech Canada's goods and services, or to erroneously

believe that RTV's and Braintech Canada's goods and services emanate from or are authorized by ABB.

66. RTV's and Braintech Canada's acts of trademark infringement have caused and are causing irreparable injury to ABB and to ABB's business and good will and if unrestrained, will cause further irreparable injury and leave ABB with no adequate remedy at law.

67. Therefore, ABB is entitled to injunctive relief against RTV and Braintech Canada permanently restraining further acts of trademark infringement and, after trial, to recover any damages proven to have been caused by reason of RTV's and/or Braintech Canada's acts of trademark infringement, together with all other remedies available under the Lanham Act, including, but not limited to, treble damages, disgorgement of profits, and costs and attorney's fees.

**COUNT SEVEN – UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, PASSING OFF AND FALSE ADVERTISINGUNDER THE LANHAM ACT § 43(A) AGAINST DEFENDANTS RTV AND BRAINTECH CANADA**

68. ABB realleges and incorporates by reference paragraphs 1 through 67.

69. ABB has developed and maintained substantial secondary meaning in each of its ABB Marks.

70. RTV and Braintech Canada have infringed and are infringing the ABB Marks by virtue of the use of those Marks on their company webpages both individually and in connection with false claims by RTV and Braintech Canada about the nature of their business relationship with ABB. Such conduct has caused or is likely to cause consumer confusion as to ABB's association with, affiliation with, or sponsorship of RTV's and Braintech Canada's goods and services.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

71. RTV's and Braintech Canada's unauthorized use of the ABB Marks is likely to cause consumers mistakenly to believe that RTV and Braintech Canada has an affiliation with ABB and/or the ABB Marks, and that RTV's and Braintech Canada's businesses are affiliated with ABB.

72. By engaging in the activities described above, RTV and Braintech Canada have made and are making false, deceptive and misleading statements constituting false designation of origin, passing off, false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

73. RTV's and Braintech Canada's acts of unfair competition, false designation of origin, passing off and false advertising are willful, deliberate and fraudulent, and without extenuating circumstances, and with an intent to reap the benefit of the ABB's name, goodwill and reputation.

74. RTV's and Braintech Canada's acts of unfair competition, false designation of origin, passing off and false advertising have caused irreparable injury to ABB's goodwill and reputation in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury, leaving ABB with no adequate remedy at law.

75. By reason of the foregoing, ABB is entitled to injunctive relief against RTV and Braintech Canada permanently restraining further acts of unfair competition, false designation of origin, passing off and false advertising, and, after trial, to recover any damages proven to have been caused by reason of RTV's and Braintech Canada's acts of unfair competition, false designations of origin, passing off and false advertising,

together with all other remedies available under the Lanham Act including, but not limited to, treble damages, disgorgement of profits, and costs and attorney's fees.

**WHEREFORE** the Plaintiff, ABB Inc., requests that this Court grant it the following forms of relief:

A.  A money judgment for ABB against Defendants for their unlawful conversion of ABB's Robots in an amount to be determined at trial, together with costs, interest and attorneys fees;

B.  A money judgment for ABB against Defendants for their unlawful conversion of ABB's Robots in an amount to be determined at trial, together with treble damages, costs, interest and attorneys fees, pursuant to MCL § 600.2919a;

C.  A judgment in ABB's favor for possession of the Robots, together with costs, interest and attorney fees;

D.  A declaratory judgment that ABB has an ongoing right to access and use the code and executables identified in the Agreement, and the Letter Agreement, and held in escrow by Pepper Hamilton;

E.  A judgment in ABB's favor awarding it ownership of the code and executables under a theory of constructive and/or equitable trust;

F.  A money judgment in ABB's favor against Defendants RTV and Braintech Canada for all damages available to ABB under the Lanham Act, including but not limited to treble damages, disgorgement of profits, costs and attorney's fees;

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

G.      A permanent injunction enjoining Defendants RTV and Braintech Canada from any further infringement of the ABB Mark; and

H.      Such other relief as may be required to make Plaintiff, ABB Inc., whole.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE**

<u>/s/Kevin J. Stoops, (P64371)</u>
Kevin J. Stoops, (P64371
2000 Town Center, Suite 900
Southfield, Michigan 48075
(248) 355-0300
kstoops@sommerspc.com

*Attorney for Plaintiff ABB Inc.*

Dated: July 1, 2010

**<u>DEMAND FOR TRIAL BY JURY</u>**

NOW COME Plaintiff, Plaintiff ABB Inc. ("ABB"), by and through its attorneys, SOMMERS SCHWARTZ, P.C., and hereby demands a trial by jury.

<u>/s/Kevin J. Stoops, (P64371)</u>
Kevin J. Stoops, (P64371
2000 Town Center, Suite 900
Southfield, Michigan 48075
(248) 355-0300
kstoops@sommerspc.com

*Attorney for Plaintiff ABB Inc.*

Dated: July 1, 2010

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300