# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ABB INC., | |
| Plaintiff, | |
| v. | Case No. 2:2010cv12626 |
| ROBOTIC VISIONTECH, LLC, BRAINTECH, INC., and BRAINTECH CANADA, INC. | Hon. John Corbett O'Meara |
| Defendants. | |

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

By way of this Motion and the attached Memorandum of Law, Plaintiff ABB Inc. ("ABB"), pursuant to Fed.R.Civ.P. 65 and LR 65.1, moves for a temporary restraining order and preliminary injunction. Specifically, ABB seeks: 1) access to various software code and executables[1] that are currently being held in escrow and to which ABB has a legal right of access; and 2) return of two robots[2] belonging exclusively to ABB, and loaned by ABB to the Defendants which the Defendants have failed and refused to return.  In doing so, ABB asks this Court to enjoin Defendants Robotic Visiontech, LLC, Braintech, Inc., and Braintech Canada, Inc. (collectively "Defendants"), and all persons acting in concert with them, from preventing

---

[1] "Software code and executables" are the actual files that are used to develop, modify, and/or fix the software that controls robots. ABB requires the code/executables in order to service the robots of its customers that have warranty or other technical issues.

[2] The robots are essentially moveable arms that pick items out of bins, and perform other automated tasks.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER   •   SUITE 900   •   SOUTHFIELD, MICHIGAN 48075   •   (248) 355-0300

ABB from exercising its  right to access the software code and executables, and requiring them to return the ABB robots.

The grounds for this Motion are more fully set forth in Plaintiff's memorandum filed in support of this Motion, and the accompanying Declaration of James Connelly, with exhibits.

Pursuant to LR 7.1, Plaintiff's attorneys have conferred with Defendants' attorneys regarding the relief sought.  The parties were unable to resolve this matter, and in fact received no response to several telephone calls, e-mails and letters regarding this and other matters, from an attorney (Geoffrey Greaves) in the Washington D.C. area who indicated he represented Defendant Robotic Visiontech, LLC.

WHEREFORE, Plaintiff, ABB Inc., respectfully requests that this Court grant its Motion for a Temporary Restraining Order and Preliminary Injunction and:

1.    Require Defendants to grant ABB access to and use of the software code and executables identified in the Parties' Exclusive Global Channel Agreement, and the Parties' Letter of Commercial Clarifications, and currently held in escrow by Pepper Hamilton LLP;

2.    Require Defendants to return to ABB the loaned Robots identified in the Parties' Equipment Loan Agreement and/or to provide specifics as to their location so that ABB can retrieve them; and

3.    Grant ABB such other and further relief as the Court deems just and proper.

/a/Kevin J. Stoops (P64371)
SOMMERS SCHWARTZ, PC
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: (248) 355-0300
Facsimile: (248) 936-2143
kstoops@sommerspc.com

Attorney for Plaintiff

Dated: August 4, 2010

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ABB INC.,

        Plaintiff,

v.                              Case No. 2:2010cv12626

ROBOTIC VISIONTECH, LLC,
BRAINTECH, INC., and BRAINTECH      Hon. John Corbett O'Meara
CANADA, INC.

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES ....................................................................................... ii

STATEMENT OF ISSUES PRESENTED PURSUANT TO LR 7.1(d)(2) ................................. iv

FACTUAL BACKGROUND ...................................................................................... 1

    I.     PARTIES ................................................................................................ 1

    II.    AGREEMENTS ....................................................................................... 2

    III.   DEFENDANTS' WRONGFUL CONDUCT ................................................. 4

STANDARD OF REVIEW ......................................................................................... 6

    A.    TEMPORARY RESTRAINING ORDERS ................................................. 6

    B.    PRELIMINARY INJUNCTIONS ............................................................. 7

ARGUMENT .......................................................................................................... 8

    I.     ABB CAN EASILY DEMONSTRATE ALL FACTORS
         NECESSARY FOR THE ISSUANCE OF A TEMPORARY
         RESTRAINING ORDER AND PRELIMINARY INJUNCTION
         AND ISSUANCE OF SUCH INJUNCTIVE RELIEF IS THE
         ONLY WAY TO CURB DEFENDANTS' ILLEGAL CONDUCT
         AND PROTECT ABB'S BUSINESS RELATIONSHIPS AND
         PROPERTY ........................................................................................... 8

         A.    ABB WILL SUFFER IMMEDIATE AND
             IRREPARABEL HARM ..................................................................... 8

         B.    ABB IS LIKELY TO SUCCEED ON THE MERITS OF
             ITS CLAIMS .................................................................................. 10

             i.    CONVERTED ROBOTS ....................................................... 10

             ii.   ACCESS TO THE SOFTWARE CODE AND
                  EXECUTABLES ................................................................ 11

         C.    THE BALANCE OF HARDSHIPTS WEIGHTS IN
             ABB'S FAVOR .............................................................................. 14

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER   •   SUITE 900   •   SOUTHFIELD, MICHIGAN 48075   •   (248) 355-0300

i

      i.     THE HARM TO ABB OUTWEIGHTS THE
              HARM TO DEFENDANTS ........................................................... 14

      ii.    THE HARM TO THIRD PARTIES AS A RESULT
              OF DEFENDANTS' ACTIONS WEIGHS IN
              FAVOR OF A PRELIMINARY INJUNCTION .......................... 15

D.     ENJOINING DEFENDANTS' IMPROPER AND
        ILLEGAL CONDUCT WILL SERVE THE PUBLIC
        INTERREST ............................................................................... 15

CONCLUSION     ..................................................................................................... 15

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER   •   SUITE 900   •   SOUTHFIELD, MICHIGAN 48075   •   (248) 355-0300

## <u>INDEX OF AUTHORITIES</u>

### <u>CASES</u>

*Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992) ...................................... 8, 9

*Blue Cross & Blue Shield Mut. Of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318 (6th Cir. 1997) ...................................................................................... 7

*Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 860 N.E.2d 713, 827 N.Y.S.2d 96 (2006) ............................................................................................... 10

*County of Oakland by Kuhn v. Vista Disposal, Inc.*, 826 F. Supp. 218 (E.D. Mich. 1993) ....................................................................................................................... 13

*CSX Transp., Inc. v. Tennessee State Bd. Of Equalization*, 964 F.2d 548 (6th Cir. 1992) ....................................................................................................................... 7

*Detroit Med. Ctr. v. GEAC Computer Sys., Inc.*, 103 F.Supp.2d 1019 (E.D. Mich. 2000) ....................................................................................................................... 10

*Friendship Materials v. Michigan Brick*, 679 F.2d 100 (6th Cir. 1982).................... 8

*G&V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994)...... 7

*In Re DeLorean*, 755 F.2d 1223 (1985) ...................................................................... 8

*In re Eagle-Picher Indus., Inc.*, 963 F.2d 855 (6th Cir. 1992) ................................. 8

*Int'l Longshoreman's Ass'n v. Norfolk S. Corp.*, 927 F.2d 900 (6th Cir. 1991), *cert. denied*, 502 U.S. 813 (1991) ................................................................................. 7

*Kreinberg v. Dow Chem. Co.*, 2007 WL 2782060 at *9 (E.D. Mich. Sept. 24, 2007) ............... 12

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ...................................................................................................................... 11

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ...................................................................................................................... 12

*Merrill Lynch, Pierce, Fenner & Smith, Inc.  v. Ran*, 67 F.Supp.2d 764 (E.D. Mich. 1999) ................................................................................................................ 7, 8, 9

*Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587 (6th Cir. 2001) ........................... 7, 9

*Michigan Chamber of Commerce v. Land*, 2010 WL 2757975, *1 (W.D. Mich. July 13, 2010) ................................................................................................................. 6

*Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171 (6th Cir. 1995) ...................... 7

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER   •   SUITE 900   •   SOUTHFIELD, MICHIGAN 48075   •   (248) 355-0300

*Ne. Ohio Coal. for Homeless and Serv. Employees Int'l Union, L. 1199 v. Blackwell,* 467 F.3d 999 (6th Cir. 2006) ................................................................................................ 6, 7

*Neveux v. Webcraft Technologies, Inc.*, 921 F.Supp.1568 (E.D. Mich. 1996) ........................... 15

*Ohio Republican Party v. Brunner,* 543 F.3d 357 (6th Cir. 2008) ................................................ 6

*Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995)....................... 8

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749 (6th Cir. 1998) ................................................................................................................................. 7

*Sandison v. Michigan High Sc. Athletic Assoc.*, 64 F.3d 1026 (6th Cir. 1995) ........................... 15

*Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F.Supp.2d 811 (E.D. Mich. 2008).............. 10

*Superior Consulting Co., Inc. v. Walling*, 851 F.Supp. 839 (E.D. Mich. 1994) ........................... 8

*Thomas v. Watt*, 104 Mich. 201, 62 N.W. 345 (1895) ............................................................ 3, 10

*U.S. v. Currency $11,331,* 482 F.Supp.2d 873 (E.D. Mich. 2007) ............................................. 14

*U.S. v. NBD Bank, N.A.*, 922 F.Supp. 1235, 31 U.C.C. Rep. Serv. 2d 1079 (E.D. Mich. 1996) ............................................................................................................................ 13

*World Religious Relief v. Gospel Music Channel*, 563 F.Supp.2d 714 (E.D. Mich. 2008) ................................................................................................................................. 11

## **OTHER AUTHORITIES**

U.S. Const. Art. III, § 2; 28 U.S.C. § 2201 .................................................................................. 12

## **RULES**

Fed.R.Civ.P. 65(b) ......................................................................................................................... 6

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER   •   SUITE 900   •   SOUTHFIELD, MICHIGAN 48075   •   (248) 355-0300

## STATEMENT OF ISSUES PRESENTED
## PURSUANT TO LR 7.1(d)(2)

I.      Should Defendants be required to grant ABB access to and use of the software code and executables identified in the Parties' Exclusive Global Channel Partner Agreement and Letter of Commercial Agreement, and currently held in escrow by Pepper Hamilton LLP, as required by the Parties' contracts and/or under equity theories?

      Plaintiff Answers:          "Yes"

      Defendants Answer:          "No"

      The Court Should Answer:      "Yes"

II.     Should Defendants be required to return the loaned Robots to ABB and/or to provide specifics as to the Robots' location so that ABB can retrieve them pursuant to the Parties' Equipment Loan Agreement and applicable state law?

      Plaintiff Answers:          "Yes"

      Defendants Answer:          "No"

      The Court Should Answer:      "Yes"

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER ● SUITE 900 ● SOUTHFIELD, MICHIGAN 48075 ● (248) 355-0300

**FACTUAL BACKGROUND**

**I.      PARTIES**

ABB is a Delaware corporation with its principal office in Raleigh, North Carolina.  *See* Exh. 1; Declaration of James P. Connelly with exhibits ("Connelly Decl.") at ¶2.  ABB, among other things, manufactures, services and repairs electrical automation equipment, including robots and other control devices for use in the automotive industry. Connelly Decl. ¶3.

Defendant Robotic Visiontech, LLC ("RVT"), is a Nevada limited liability company, with its principal place of business in Great Falls, Virginia.  RVT was formed by F.W. "Rick" Weindinger ("Weindinger") after Weindinger and others purchased the assets of Braintech at a private foreclosure sale.  Connelly Decl. ¶8.  Weindinger is a former officer and/or owner of Braintech, Inc.  *Id.*  RVT's website also at one time referred to its long history as "Braintech." Connelly Decl. ¶9.

Defendant Braintech Canada, Inc. ("Braintech Canada") is or was a Canadian corporation that has or had its principal office in North Vancouver, British Columbia, Canada.  Connelly Decl.  ¶6.  Today Braintech Canada's website lists the McLean, Virginia address as the headquarters address for "Braintech" and Braintech Canada has been acquired by or otherwise merged into Braintech.  Connelly Decl. ¶9.  Defendant Braintech, Inc. ("Braintech") is a Virginia company that, while still listed as active on the Virginia Secretary of State website, is essentially defunct and does not maintain a principal place of business as best ABB can tell.  Connelly Decl. ¶7.

Defendants RVT, Braintech and Braintech Canada were and are operated as a single entity by Weindinger and others, and it is ABB's belief this was done without respect to the

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

corporate form. *Id.*  Each is the alter ego of the other and is legally responsible for the acts and omissions of the other.

## II.    AGREEMENTS

On or about May 5, 2006, Defendant Braintech Canada and ABB entered into an "Exclusive Global Channel Partner Equipment" (the "Agreement").  Connelly Decl. ¶13; Ex. A. Via the terms of the Agreement, ABB agreed to license at great expense certain of Braintech's vision guided robotics technologies.  *Id.*  ABB payments for these licenses constituted all or nearly all of Braintech's revenue over the last several years.  Connelly Decl. ¶14.  All told, ABB spent approximately $8,000,000 under the Agreement for approximately 600 software licenses. *Id.*

In return for ABB's significant commercial commitment to Braintech, the Agreement specifically gave ABB the right to have access to the software code and executables for the software ABB licensed under the Agreement.  Connelly Decl. ¶15; Ex. A.  "Software code and executables" are the actual files that are used to develop, modify, and/or fix the software that controls the ABB robots. ABB requires the code/executables in order to service the robots of any of its customers that have warranty or other technical issues. Per ¶¶27.1-27.3 of the Agreement, ABB's right to access the software code and executables deliberately extended even beyond the term of the Agreement and/or any Braintech insolvency.  Connelly Decl. ¶16; Ex. A, p. 18.

Paragraph ¶27.1 of the Agreement grants ABB the right to "use the BRAINTECH software in executable and where necessary code form" for purposes of supporting systems[3] ABB had installed with its customers. Connelly Decl. ¶17; Ex. A, p. 18.  This is a standard

---

[3] ABB installs systems in the production lines of factories of customers such as major automobile manufacturers.  The systems  include (a) software to control the robot and (b) the robot itself (the hardware).

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

provision in software license agreements, and it gives ABB the right to access the code and executables in order to service its customers in the event of a Braintech insolvency. The Parties effectuated this provision via an escrow arrangement, with the software code and executables first being held at the Law Offices of Clark Wilson in Vancouver, Canada. Connelly Decl. ¶18; Ex. A, p. 18.

During the course of the Agreement, Braintech moved to Virginia, according to Thomas McCabe (Braintech's Executive Vice President, General Counsel and Secretary) in a letter dated April 27, 2009, to James D. VandeWyngearde, Esq. of Pepper Hamilton LLP in Detroit, Michigan. Connelly Decl. ¶19; Ex. B. Afterwards, Braintech deposited the escrowed software code and executables with Greenberg Traurig, LLP in McLean, Virginia. Connelly Decl. ¶20; Ex. B. The terms of the April 27, 2009 letter make it clear that Braintech and Braintech Canada were essentially acting as a single entity, and that it was Braintech who was setting up the escrow in Michigan for the benefit of ABB. Connelly Decl. ¶21; Ex. B.

On February 24, 2009, Braintech and ABB entered into a Letter of Commercial Clarifications (the "Letter Agreement") designed to (a) reaffirm the existence and continued validity of the Agreement and (b) settle certain disputes that had arisen as to the meaning of some of the terms in the Agreement, and clarify the ongoing contractual obligations of the parties. Connelly Decl. ¶22; Ex. C. At ¶5 of the Letter Agreement, Braintech reaffirmed the escrow arrangement in the Agreement, and agreed to additional terms allowing ABB the right to perform certain inspections related to the software code and executables. Connelly Decl. ¶23; Ex. C, p.3.

The escrow moved again on April 27, 2009. Connelly Decl. ¶24; Ex. B. On that date, as referenced above, Braintech's General Counsel Mr. McCabe wrote to Mr. VandeWyngearde,

referenced §27 of the original Agreement, and stated that "in deference to ABB's Detroit area location, Braintech sends you the Escrow in its most current updated form."  Connelly Decl. ¶24; Ex. B.  The software code and executables remain in escrow with Pepper Hamilton LLP to this day.  Connelly Decl. ¶25.

On July 1, 2009, ABB and Braintech entered into another agreement entitled the "Equipment Loan Agreement" (the "Equipment Loan") by which ABB loaned an IRB 6600 IRC5 Robot and controller with the serial number 66-52030 and IRB140 S4C+ Robot and controller with the serial number 14-11506 to Braintech (the "Robots").  Connelly Decl. ¶26; Ex. D.  Under §1 of the Equipment Loan, Braintech was to use the two Robots to improve its eVF ("eVisionFactory")[4] software platform for vision-guided robots, and for that purpose only.  Connelly Decl. ¶27; Ex. D.  Pursuant to §5 of the Equipment Loan, ABB retained all title and ownership in the Robots.  Connelly Decl. ¶29; Ex. D.  The Robots, which are currently valued at approximately $40,000, are essentially moveable arms that pick items out of bins, and perform other similar automated tasks.

Pursuant to §4 of the Equipment Loan, the Robots were not to be moved from Braintech's Pontiac, Michigan location without ABB's consent.  Connelly Decl. ¶28; Ex. D.  Despite this, Braintech and/or RVT have removed ABB's Robots and, as of the date of filing of ABB's Motion for Temporary Restraining Order and Preliminary Injunction, none of the Defendants have disclosed their precise whereabouts despite promising to do so.

### III.    DEFENDANTS' WRONGFUL CONDUCT

In the spring of 2010, as Braintech's fortunes declined, certain Braintech and/or RVT personnel attempted to improperly obtain release of the software code and executables from

---

[4] This was the software system developed and owned by Braintech which was used to develop, run, and support vision-guided robotics workspaces.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

Pepper Hamilton LLP without ABB's consent.  Connelly Decl. ¶35.  Additionally, Braintech's senior management purchased the security interest held by Braintech's lender(s) and then conducted a private auction sale in Virginia in late May of 2010 by which they and/or RVT acquired Braintech's (and Braintech Canada's) assets.  Connelly Decl. ¶33.

Since then, counsel for ABB has been in contact with at least three (3) different lawyers who claimed to or did in fact represent Braintech and/or RVT.  Connelly Decl. ¶52.  These discussions focused on (a) ensuring ABB's continuing access to the software code and executables and (b) obtaining the return of the Robots.  *Id.*  After some initial discussions in June and into July 2010 between counsel for ABB and for RVT and Braintech, and between RVT's business principals and ABB's, Defendants ceased communications, forcing ABB to file its lawsuit on July 1, 2010.  Connelly Decl. ¶53.

In June 2010, Defendants moved the Robots from Braintech's former Pontiac, Michigan facility without ABB's consent.  Connelly Decl. ¶38.  ABB's counsel has repeatedly demanded a return of the Robots from Defendants' counsel.  Connelly Decl. ¶39.  Defendants' counsel has informed ABB generally as to the Robots' whereabouts (apparently in the Sterling Heights area), but no specifics have been provided as to their location and/or when or where ABB can retrieve them.  Connelly Decl. ¶40.  Defendants are therefore in unlawful possession of ABB's Robots. *Id.*

Throughout July 2010, Defendants' counsel has sporadically contacted ABB counsel about various undefined "business relationships."   *See* Connelly Decl. ¶53.  However, the Defendants have continued to deny ABB access to the software code and executables, as well as the Robots.  *Id.*

On August 3, 2010, after Defendants' continued failure to contact ABB or its counsel, ABB's counsel issued correspondence to Attorney Geoffrey Greeves who, upon information and belief, serves as counsel for one or more of the Defendants. (*See* Exh. 2).  Prior to that, counsel for ABB had attempted to contact Mr. Greeves by e-mail and telephone about the matters raised by this Motion.

By way of the August 3, 2010 letter, ABB's counsel again sought return of the robots and access to the software code and executables. (*Id.*).  Additionally, the letter indicated that ABB intended to file the instant motion to seek injunctive relief to curb Defendants' improper and illegal behavior. (*Id.*).  To date, neither the Defendants nor their Mr. Greeves have responded to the correspondence.

## STANDARD OF REVIEW

### A.  Temporary Restraining Orders:

Pursuant to Fed.R.Civ.P. 65(b), a temporary restraining order is appropriately granted to prevent "immediate and irreparable injury, loss or damage."  Whether to grant a temporary restraining order is within the Court's discretion.  *See Ohio Republican Party v. Brunner,* 543 F.3d 357, 361 (6th Cir. 2008); *Ne. Ohio Coal. for Homeless and Serv. Employees Int'l Union, L. 1199 v. Blackwell,* 467 F.3d 999, 1009 (6th Cir. 2006); *Michigan Chamber of Commerce v. Land*, 2010 WL 2757975, *1 (W.D. Mich. July 13, 2010).  In determining whether to enter a temporary restraining order, the Court must consider the following factors:

(1) Whether the moving party demonstrates a strong likelihood of success on the merits;

(2) Whether the moving party would suffer irreparable injury without the order;

(3) Whether the order would cause substantial harm to others; and

(4) Whether the public interest would be served by the order.

6

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

*Id.*

The four factors are not prerequisites that must be met, but are interrelated concerns that must be balanced together. *See Ne. Ohio Coal.,* 467 F.3d at 1009; *Land,* 2010 WL 2757975, *1.

**B.  Preliminary Injunctions:**

The decision of whether or not to issue a preliminary injunction also lies within the discretion of the Court.  *CSX Transp., Inc. v. Tennessee State Bd. Of Equalization*, 964 F.2d 548, 552 (6th Cir. 1992); *Merrill Lynch, Pierce, Fenner & Smith, Inc.  v. Ran*, 67 F.Supp.2d 764, 772 (E.D. Mich. 1999).  Likewise, in deciding whether to issue a preliminary injunction the Court should consider the following factors:

    a.    The likelihood that the moving party will succeed on the merits;

    b.    Whether the moving party will suffer irreparable harm in the absence of a preliminary injunction;

    c.    Whether a preliminary injunction will cause substantial harm to others; and

    d.    Whether a preliminary injunction will serve the public interest.

*See e.g., Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587 (6th Cir. 2001); *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).[5]

Again, the Court is to be flexible in its consideration, and these four considerations are factors to be balanced against and among each other, as opposed to individual prerequisites that must be satisfied.  *See Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381

---

[5] *See also Blue Cross & Blue Shield Mut. Of Ohio v. Columbia/HCA Healthcare Corp.*, 110 F.3d 318, 322 (6th Cir. 1997); *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1175 (6th Cir. 1995); *G&V Lounge v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *Int'l Longshoreman's Ass'n v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991), *cert. denied*, 502 U.S. 813 (1991); *In Re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

(6th Cir. 1995); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855 (6th Cir. 1992);  *In Re DeLorean*, 755 F.2d 1223, 1229 (1985); *Superior Consulting Co., Inc. v. Walling*, 851 F.Supp. 839, 846 (E.D. Mich. 1994).  The likelihood of success that needs be shown for a preliminary injunction varies inversely with the degree of injury the plaintiff will suffer absent an injunction. *See Friendship Materials v. Michigan Brick*, 679 F.2d 100, 105 (6th Cir. 1982).[6]

## ARGUMENT

**I.     ABB CAN EASILY DEMONSTRATE ALL FACTORS NECESSARY FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND ISSUANCE OF SUCH INJUNCTIVE RELIEF IS THE ONLY WAY TO CURB DEFENDANTS' ILLEGAL CONDUCT AND PROTECT ABB'S BUSINESS RELATIONSHIPS AND PROPERTY.**

As set forth below, in this case all factors favor granting the requested relief, specifically a temporary restraining order and preliminary injunction. Not only can ABB easily demonstrate a substantial likelihood of success on the merits, there can be no question that ABB will suffer irreparable harm if the requested relief is not granted.

### A.  ABB will suffer immediate and irreparable harm.

Irreparable harm is harm that cannot be adequately compensated by money damages.  *See Performance Unlimited*, 52 F.3d 1373, 1382; *Basicomputer*, 973 F.2d 507, 511; *Merrill Lynch, Pierce, Fenner & Smith, Inc.   v. E.F. Hutton & Co., Inc.*, 403 F.Supp. 336, 343 (E.D. Mich. 1975).  "An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate."  *Basicomputer*, 973 F.2d 507, 512.

---

[6] Thus, "[t]he moving party must show a strong likelihood of success on the merits if all other factors militate against granting a preliminary injunction." *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Grall*, 836 F.Supp. 428, 432 (W.D. Mich. 1993).  "Similarly, the moving party need show less likelihood of success on the merits if the other factors indicate that the Court should issue a preliminary injunction." *Id.*

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

Because the harm caused to ABB is incalculable by its inability to access the software code and executables – or worse yet, Defendants' improper access of, or dominion and control over, the software code and executables – the entry of a preliminary injunction is warranted. To be sure, ABB will be unable to service its customers because of loss of access to the software code and executables in derogation of its contractual rights, and is suffering ongoing disruption of business operations, loss of business opportunities, loss of goodwill and other commercial and reputational damage. Connelly Decl. ¶36.

The loss of customer goodwill and future business opportunities often amount to irreparable harm because the damages flowing from such immeasurable losses are extremely difficult to compute. *Basicomputer*, 973 F.2d at 511-12; *Michigan Bell*, 257 F.3d 587, 599. Customer goodwill is an "invaluable intangible" which is "not easily quantified" given the "complexities and uncertainties of developing a client base." *Merrill Lynch v. Ran*, 67 F.Supp.2d 764, 778-9. Damages relating to the loss of "competitive edge" are indefinite, speculative, and incapable of exact proof. *Superior Consulting*, 851 F. Supp. 839, 847; *Basicomputer*, 973 F.2d at 512.

ABB is immediate danger of this happening. As the Agreement acknowledges at §27.1, no matter what happens to Braintech, ABB is responsible for supporting systems installed and paid-for by its end-user facilities. *See* Connelly Decl. 16, Ex. A. ABB does not otherwise presently have the ability to service the customer's robots. Connelly Decl. ¶55. If ABB does not get access to the software code and executables, it will be unable to provide necessary service to its robotics customers and will potentially lose them. Moreover, if as a result of Defendants' misconduct, ABB develops a reputation in the marketplace of abandoning its customers and

poorly supporting and maintaining its systems, ABB will suffer incalculable future business opportunities.

**B.  ABB is likely to succeed on the merits of its claims.[7]**

ABB is not required to demonstrate with certainty that it will prevail on the merits of its claims against Defendants. *See Detroit Med. Ctr. v. GEAC Computer Sys., Inc.*, 103 F.Supp.2d 1019 (E.D. Mich. 2000).  It is enough "if the merits present a sufficiently serious question to justify further investigation."  *In re DeLorean*, 755 F.2d 1223, 1230.  However, as detailed below, ABB can demonstrate that it is likely to succeed on its claims.

**i.  Converted Robots**

ABB's first claim is for conversion against all Defendants with respect to the Robots. Under New York law[8], applicable here under §14(A) of the Equipment Loan,  a conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50, 860 N.E.2d 713, 717, 827 N.Y.S.2d 96, 100 (2006).  The two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it,

---

[7] The Agreement is governed by the laws of the State of Michigan, without reference to the conflict of laws principles.  Agreement, ¶23.1. The Letter Agreement did not alter this.  The Equipment Loan is governed by New York law.  Equipment Loan, §14(A).

[8] The result would be the same under Michigan law.  Under Michigan law, the tort of "conversion" is any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein. *Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F.Supp.2d 811 (E.D. Mich. 2008).  To constitute an unlawful conversion there must be findings that: (1) the plaintiff had a property right in and a right to immediate possession of personal property in the defendant's hands at the time of conversion; (2) plaintiff made a legal demand for the property; and (3) the defendant under these circumstances refused to deliver the property to the plaintiff.  *Thomas v. Watt*, 104 Mich. 201, 62 N.W. 345 (1895).

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

in derogation of plaintiff's rights. *Id.*

Here, ABB is the sole owner of the Robots. ABB loaned the Robots to Defendants pursuant to the Equipment Loan which clearly stated: a) ABB retained ownership over the Robots (§5); and b) that Defendants were not to move the Robots without ABB's consent (§4). ABB has terminated the Equipment Loan, and demanded return of the Robots from Defendants, who have failed to respond to that demand and have not returned the Robots.

Thus, Defendants are exercising improper dominion and control over the Robots. By failing to return them upon proper demand, Defendants have intentionally and willfully converted the Robots to their own use and ownership. ABB is entitled to injunctive relief requiring the return of the Robots.

### ii.     Access to the Software Code and Executables

ABB's second claim is for declaratory judgment against all Defendants with respect to access to the software code and executables. For the Court to have jurisdiction over a claim for a declaratory judgment, there must be an "actual controversy." U.S. Const. Art. III, § 2; 28 U.S.C. § 2201.  "[B]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *World Religious Relief v. Gospel Music Channel*, 563 F.Supp.2d 714 (E.D. Mich. 2008) *citing Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Kreinberg v. Dow Chem. Co.,* 2007 WL 2782060 at *9 (E.D. Mich.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

Sept. 24, 2007) *citing MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007).

The terms of the Agreement set up an escrow of Braintech's software code and executables and guaranteed ABB such access and use of these as necessary for ABB to service its vision-guided robotics customers.  Defendants have refused ABB access to the software code and executables, and have improperly asked the escrow agent, Pepper Hamilton LLP, to return the software code to them.  Thus, an actual, justiciable controversy exists between the Parties as to their respective rights under the Agreement and the Letter Agreement to the escrowed software code and executables.  The controversy is genuine as ABB has demanded but been denied access to the software code and executables while RVT has improperly conditioned the right of access on the entrance of ABB into an as yet undefined "business relationship" with ABB.

ABB is likely to prevail on this claim.  ABB and Braintech agreed to place the software code and executables in escrow for ABB to access in the event Braintech ceased operations.  That has happened, and ABB needs access to the software code and executables in order to service its customers.  ABB will ultimately prevail on this issue on the merits, and should not be denied immediate access to the software code and executables now.

ABB's third claim is for similar relief, but posited differently. It is for equitable or constructive trust with respect to access to the software code and executables.

Under Michigan law, when it is shown that title has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for holder of legal title to retain and enjoy property, *see U.S. v. NBD Bank, N.A.*, 922 F.Supp. 1235, 31 U.C.C. Rep.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

Serv. 2d 1079 (E.D. Mich. 1996); *County of Oakland by Kuhn v. Vista Disposal, Inc.*, 826 F. Supp. 218 (E.D. Mich. 1993), and there are no intervening rights of bona fide purchasers, equity will impress constructive trust on property and turn it over to one to whom it rightfully belongs. *Vista Disposal*, 826 F. Supp. 218.

Over several years, ABB essentially invested large sums of money in Braintech and Braintech Canada.  Connelly Decl. ¶10.  ABB was Braintech's and Braintech Canada's only customer for many years.  Connelly Decl. ¶12.  Using ABB's investment, Braintech and Braintech Canada developed software for robotic applications to enable ABB to compete against other existing vision technologies.  Connelly Decl. ¶11.

As set forth in the Agreement and the Letter Agreement, Braintech and/or Braintech Canada was to place that software code and executables in escrow for use by ABB in servicing its customers should Braintech and/or Braintech Canada become insolvent.  Connelly Decl. ¶¶30 and 54; Exs. A and C.  That day has come.  Braintech and/or Braintech Canada are now insolvent, and their assets – including technical title to and ownership of the software code and executables – have been purchased by Weindinger and other former officers of Braintech and/or Braintech Canada.  Connelly Decl. ¶31.

In late April or early May 2010, Weindinger set up RVT to own and operate the assets of Braintech and/or Braintech Canada.  Connelly Decl. ¶32.  On or about May 24, 2010, Weindinger and/or Braintech senior management held a private auction sale designed to strip the assets of Braintech and/or Braintech Canada of any attached liabilities, by which they and/or RVT acquired Braintech's (and Braintech Canada's) assets.  Connelly Decl. ¶¶33, 34; *see also* Ex. E.

13

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

Under Michigan law, a constructive trust may be imposed where such trust is necessary to do equity or to prevent unjust enrichment. *U.S. v. Currency $11,331*, 482 F.Supp.2d 873 (E.D. Mich. 2007).   ABB for all intents and purposes paid for the development of the escrowed software code and executables via ABB's extensive investment in Braintech.   Connelly Decl. ¶37.   ABB attempted to protect its right to access those items via the escrow agreements memorialized in the Agreement and Letter Agreement, but Defendants are trying to subvert those contracts via the sham purchase and set-up of RVT. *Id.*

RVT, via the actions of Weindinger, has acted in such a way as to make its continued ownership of the software code and executables unconscionable.   It would be fundamentally unfair and constitute unjust enrichment for RVT to retain title to the software code and executables.   ABB therefore has a constructive and/or equitable trust over the software code and the executables, and their ownership should be transferred to ABB.   Thus, ABB is entitled to injunctive relief requiring Defendants to give ABB access to the withheld software code and executables.

**C.  The balance of hardships weighs in ABB's favor.**

> **i.       The harm to ABB outweighs the harm to Defendants.**

The balance of hardships as between ABB and Defendants clearly favors granting injunctive relief.   Defendants are not being asked to do anything that they are not required to do under their series of agreements with ABB.   The injunctive relief sought by ABB would merely hold Defendants to their legal obligations, and would prevent Defendants from doing any more damage to ABB.

ii.     **The harm to third parties as a result of Defendants' actions weighs in favor of a preliminary injunction.**

Plaintiffs may also be entitled to a preliminary injunction where they demonstrate that third parties will not be harmed by the issuance of a preliminary injunction.  *See Sandison v. Michigan High Sc. Athletic Assoc.*, 64 F.3d 1026, 1030 (6th Cir. 1995). Here, Defendants' customers will not be harmed by a preliminary injunction.  Moreover, other third parties, namely ABB's robotics customers, are right now being directly harmed by ABB's inability to access the software code and executables and service its products.  These third parties will be greatly benefited by ABB's access to the software code and executables.

**D.  Enjoining Defendants' improper and illegal conduct will serve the public interest.**

Finally, there can be no question that enjoining the Defendants' improper and illegal conduct will serve the public interest. The public always has an interest in preserving the enforceability of contracts, such as the Parties' Agreement, Letter Agreement, and the Equipment Loan.  *See Neveux v. Webcraft Technologies, Inc.*, 921 F.Supp.1568, 1573 (E.D. Mich. 1996). Enforcing the clear and ambiguous language of the parties' agreements is the exact relief that ABB seeks by way of this motion.

## CONCLUSION

Therefore, ABB has shown it will suffer irreparable harm, a likelihood of success on the merits of its claims that it is without an adequate remedy at law, that the equities weigh in its favor, and that an injunction would serve the public interest.

Accordingly, ABB respectfully requests that this Court grant Plaintiff's motion for a temporary restraining order and preliminary injunction.

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

WHEREFORE, Plaintiff, ABB Inc., respectfully asks the Court to enter an Order:

1.  Requiring Defendants to grant ABB access to and use of the software code and executables identified in the Parties' Exclusive Global Channel Agreement, and the Parties' Letter of Commercial Clarifications, and currently held in escrow by Pepper Hamilton LLP;

2.  Requiring Defendants to immediately return to ABB the loaned Robots identified in the Parties' Equipment Loan Agreement and/or to provide specifics as to their location so that ABB can retrieve them; and

3.  Granting ABB such other and further relief as the Court deems just and proper.


/a/Kevin J. Stoops (P64371)
SOMMERS SCHWARTZ, PC
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: (248) 355-0300
Facsimile: (248) 936-2143
kstoops@sommerspc.com

Attorney for Plaintiff

Dated: August 4, 2010

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER  •  SUITE 900  •  SOUTHFIELD, MICHIGAN 48075  •  (248) 355-0300

16