UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ABB INC.,<br><br>Plaintiff,<br><br>v.<br><br>ROBOTIC VISIONTECH, LLC,<br>BRAINTECH, INC., and BRAINTECH<br>CANADA, INC.<br><br>Defendants. | Case No. 5:10-cv-12626-JCO-PJK<br><br>Judge John Corbett O'Meara<br>Magistrate Judge Paul J. Komives |

### DEFENDANT ROBOTICVISIONTECH, LLC'S MOTION TO COMPEL ARBITRATION

Defendant RoboticVISIONTech, LLC ("RVT"), by and through counsel, hereby respectfully moves this Court, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to compel arbitration of Plaintiff's claims and dismiss them or, in the alternative, stay this action, pending resolution of arbitration.

In support of this Motion, Defendant RVT submits the attached Memorandum.

Date: August 12, 2010

Respectfully submitted,

/s/ Geoffrey J. Greeves
Geoffrey J. Greeves
Geoffrey.greeves@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone:  202-663-8000
Facsimile:  202-663-8007
Attorney for Defendant RoboticVISIONTech, LLC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ABB INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBOTIC VISIONTECH, LLC, BRAINTECH, INC., and BRAINTECH CANADA, INC. <br><br> Defendants. | Case No. 5:10-cv-12626-JCO-PJK <br><br> Judge John Corbett O'Meara <br> Magistrate Judge Paul J. Komives |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ROBOTICVISIONTECH, LLC'S MOTION TO COMPEL ARBITRATION**

## STATEMENT OF ISSUES PRESENTED PURSUANT TO LR 7.1(d)(2)

I. Should this Court compel arbitration of this dispute, pursuant to the parties' arbitration agreement, which can be found in the Exclusive Global Channel Partner Agreement for the Licensing of Braintech's Vision Guided Robotics Technologies, at Paragraph 23.2; and dismiss Plaintiff's claims or, in the alternative, stay the proceedings pending arbitration?

Defendant RVT's Answer:    Yes

Plaintiff's Answer:    No

Court Should Answer:    Yes


## AUTHORITY FOR RELIEF SOUGHT PURSUANT TO LR 7.1(d)(2)

Federal Arbitration Act, 9 U.S.C. §§ 1-16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000)

*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003)

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568 (6th Cir. 2003)

*Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155 (6th Cir. 1983)

*Simpson v. Lifenet, Inc.*, 2010 WL 86328 (E.D. Mich. Jan. 5, 2010)

*Innotech Sales & Eng'g, LLC v. Hostetler*, 2009 WL 1953040 (E.D. Mich. July 6, 2009)

I. **Introduction**

Defendant RoboticVISIONTech, LLC ("RVT"),[1] through its attorneys, Pillsbury Winthrop Shaw Pittman, LLP, submits this Memorandum in Support of its Motion to Compel Arbitration of Plaintiff's claims ("Motion"). For the following reasons, this Court should dismiss the Complaint or, in the alternative, stay this action, pending resolution of arbitration, pursuant to the terms of an unambiguous mandatory arbitration provision that governs this dispute.

II. **Factual Background**

Defendant RVT is one of three Defendants named in Plaintiff ABB Inc. ("ABB")'s Complaint. In May, RVT purchased at a well-advertised public auction the assets of the other named Defendants, Braintech, Inc. and Braintech Canada, Inc. (collectively, "Braintech"). *See* Declaration of Frederick Weidinger ("Weidinger Decl."), attached hereto as Exhibit A, at ¶ 5. RVT's bid at the auction exceeded $2.5 million. As a result of its winning bid, RVT acquired all of Braintech's intellectual property and other assets, including the source code and executables at issue in Counts Four and Five of the Complaint as contemplated by the Licensing Agreement.

ABB asserts several claims collectively against Defendants. First, it alleges that Defendants have intentionally and willfully converted two of its Robots, IRB 6600 IRC5 Robot and controller and IRB140 S4C+ Robot and controller. Compl. at ¶ 30, 35. Plaintiff seeks to have its Robots back and to obtain damages for their conversion. Compl. at ¶ 42, Prayer for Relief at ¶¶ (A)-(C).

ABB further alleges that Defendants have refused to give ABB access to Braintech's software codes and executables, which according to ABB are held in escrow, pursuant to the

---

[1] RVT is improperly referred to throughout Plaintiff's papers as "Robotic Visiontech, LLC" an entity that does not exist.

1

parties' escrow agreement. Compl. at ¶ 45. ABB also alleges that it has a constructive and/or equitable trust over the software codes and executables. Compl. at ¶ 55. Plaintiff seeks a declaratory judgment that it has a right to access and use the software codes and executables and, further, seeks an unrestricted right of ownership of the software codes and executables. Compl., Prayer for Relief at ¶¶ (D)-(E).

Lastly, ABB asserts various trademark infringement claims under the Lanham Act. Compl. at ¶ 65, 72. For this alleged infraction, ABB seeks damages and prohibitory injunctive relief precluding Defendants from any further alleged infringement. Compl., Prayer for Relief at ¶¶ (F)-(G).

The governing document cited in ABB's Complaint which is the genesis for the parties' relationship (if there is one) is the Exclusive Global Channel Partner Agreement for the Licensing of Braintech's Vision Guided Robotics Technologies ("Licensing Agreement"). Oddly, ABB refused to provide the Court with a copy of this document alongside its Complaint, claiming it contains "confidential information." To the contrary, nothing in the Licensing Agreement indicates that the document is confidential or must so be kept. More importantly, the Licensing Agreement, which is attached hereto as Exhibit B, contains an arbitration provision requiring the parties to arbitrate all disputes "in connection with" the Licensing Agreement. As such, this Court should stay its hand and respect the parties' choice to have this dispute heard in a binding conciliatory proceeding before the International Court of Arbitration, in accordance with ICC rules. Arbitration is mandatory under the Licensing Agreement.

2

## III. Legal Argument

Because of the above-referenced mandatory arbitration provision in the parties' Licensing Agreement, Plaintiff's claims must be stayed while ABB submits these claims to arbitration. Defendant RVT, by this Motion, seeks to compel arbitration.

### A. The Federal Arbitration Act Governs the Parties' Arbitration Agreement

Defendant RVT files this motion pursuant to Section 4 of the Federal Arbitration Act ("FAA") which provides, in relevant part:

> "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement..."

9 U.S.C. § 4. Subject to a few exceptions not applicable in this case,[2] the FAA applies to any "written provision in any... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction..." 9 U.S.C. § 2. This language "[e]xtend[s] the Act's reach to the limits of Congress' Commerce Clause power." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). *See also Encompass Ins., Inc. v. Hagerty Ins. Agency, Inc.*, 2009 WL 160776, at *7 (W.D. Mich. Jan. 22, 2009) (observing that "[t]he Supreme Court has held that this language [of Section 2 of the FAA] is broad and that the reach of the FAA is as expansive as that of the Commerce Clause").

The Licensing Agreement definitely involved interstate commerce. Per the Licensing Agreement, Braintech Canada's principal place of business was in North Vancouver, British Columbia. Later in time, Braintech, which is a Nevada corporation, relocated its robot lab to

---

[2] The FAA permits arbitration agreements to be invalidated or revoked only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts in this Circuit have interpreted that to mean that only general contractual defenses, such as fraud, duress or unconscionability, may be used to invalidate an arbitration agreement. *See Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003).

3

Pontiac, Michigan. Weidinger Decl. at ¶ 4. And Braintech's home office was in McLean, Virginia. Accordingly, Braintech was performing its obligations under the Licensing Agreement in various places throughout the United States and Canada.

RVT anticipates a challenge by Plaintiff that the arbitration provision is a revocable common law arbitration provision not enforceable in Michigan. However, because ABB invoked federal court jurisdiction for this case, the FAA preempts Michigan law concerning common law arbitration. Absent the FAA, it is true that under certain circumstances a party may unilaterally revoke an arbitration agreement.[3] The Licensing Agreement indeed chooses Michigan law, but this does not mean the parties' arbitration agreement itself is subject to Michigan's common-law revocability standards. In reconciling a contract's choice-of-law provision with its arbitration provision, the United States Supreme Court concluded that neither provision "intrudes upon the other." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63-64 (1995) (observing that, "[w]e think the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration...").

Not surprisingly, this Court has found that "[t]he FAA preempts Michigan's law regarding common law arbitration." *Mechanical Power Conversion, LLC v. Cobasys, LLC*, 500

---

[3] Under the Michigan Arbitration Act, *MCL 600.5001 et seq.*, parties must "put their agreements in writing and require that a circuit court may enforce them. Otherwise, their agreements will be treated as agreements for common-law arbitration. In addition, common-law arbitration agreements continue to be unilaterally revocable before an arbitration award is made." *Wold Architects & Engineers v. Strat*, 713 N.W.2d 750, 759 (Mich. 2006). This strict holding has subsequently been somewhat relaxed: if the parties' arbitration agreement provides for enforcement by a court, even if not specifically a "circuit court," that is sufficient. *See Rooyakker & Sitz v. Plante & Moran*, 742 N.W.2d 409, 416 (Mich. Ct. App. 2007). Also, if the parties' arbitration agreement references the rules of the American Arbitration Association, which require that parties to an arbitration consent that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction, that is sufficient. *See Int'l Millennium Consultants, Inc. v. Taycom Bus. Solutions, Inc.*, 2008 WL 5235994, at *4 (E.D. Mich. Dec. 15, 2008).

F.Supp. 2d 716, 719 (E.D. Mich. 2007) (granting motion to compel arbitration and dismissing action). This comports with the general rule that "[w]hen a state law adds a requirement to make an arbitration clause enforceable and irrevocable beyond the requirements for any other contractual clause to be enforceable and irrevocable, the FAA preempts that state requirement." *Id.* at 720. This Court has also recently been persuaded by an Iowa District Court's conclusion (determining the effect of a Michigan choice-of-law provision), in rejecting a party's argument that Michigan arbitration laws should apply: "'the FAA will govern federal courts' interpretation of arbitration clauses unless the parties make 'abundantly clear' their preference for state arbitration law,' and 'a generic choice-of-law clause that is silent on whether state arbitration rules will govern the agreement, as a matter of law, does not make the parties' intent to have federal courts apply state arbitration law 'abundantly clear.'" *Williams Int'l Co. v. New West Machine Tool Corp.*, 2010 WL 331714, at *6 (E.D. Mich. Jan. 22, 2010), *citing Volk v. X-Rite, Inc.*, 599 F.Supp. 2d 1118, 1124-25 (S.D. Iowa 2009).

Because the parties' Licensing Agreement involved interstate commerce and, furthermore, because the parties did not make it "abundantly clear" that they intended that their Licensing Agreement's choice-of-law provision be applied to the arbitration agreement, the FAA governs their arbitration agreement.

### B. These Parties Agreed to Arbitrate All Claims

In deciding Defendant RVT's Motion, this Court must determine: first, whether the parties agreed to arbitrate their disputes; and, second, whether the specific dispute falls within the scope of the arbitration agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). In making such a determination, Courts in this Circuit must "examine the language of the contract in light of the strong federal policy in favor of arbitration."

5

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In so doing, "it is… well established… that any doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

Plaintiff signed the Licensing Agreement, which requires that all related disputes be submitted to arbitration. Specifically, Paragraph 23.2 of the Licensing Agreement states:

> "All disputes in connection with this Agreement are to be finally settle (sic) by binding arbitration in the State of Michigan of the United States of America, in accordance with the then existing Rules of Conciliation and Arbitration of the International Chamber of Commerce by three (3) arbitrators to be selected in accordance with said Rules. Awards rendered therein shall be final and binding upon the parties hereto."

Licensing Agreement ¶ 23.2. Courts in this Circuit have held that analogously-worded arbitration provisions were broad enough to encompass virtually all disputes that may arise between the parties. *See, e.g., Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (observing that "[w]here the arbitration clause is broad, only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators"); *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983) (observing that "[w]here a commercial contract contains a broad arbitration provision covering all controversies arising under the agreement, arbitration is ordered unless the party seeking to avoid it can show that the particular dispute is expressly excluded").

The text of this arbitration agreement demonstrates that Plaintiff agreed to arbitrate this dispute.

### C. RVT Has Standing to Invoke Arbitration Under These Circumstances

Although RVT is not a signatory to the Licensing Agreement, the subject matter of the Licensing Agreement and related documents form the basis of ABB's claims. Thus, even as a

6

non-signatory, RVT is entitled to invoke the arbitration agreement. *See, e.g., Simpson v. Lifenet, Inc.*, 2010 WL 86328, at *2 (E.D. Mich. Jan. 5, 2010) (adopting magistrate judge's report and recommendation, which found analysis from a Fifth Circuit decision persuasive: "The *Grigson* court concluded that when the signatory to an arbitration agreement brings a claim against a nonsignatory that 'makes reference to or presumes the existence of a written agreement,' the signatory plaintiff is equitably estopped from filing suit in lieu of arbitration if 'the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate'"; granting non-signatory Defendant's motion to dismiss); *Innotech Sales & Eng'g, LLC v. Hostetler*, 2009 WL 1953040, at *3 (E.D. Mich. July 6, 2009) (observing that "circuit courts have held that a non-signatory to an agreement may compel arbitration with a signatory under a theory of 'equitable estoppel' in certain circumstances," and, further, that "equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory. When each of a signatory's claims against a non-signatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise out of and relate directly to the written agreement,' and arbitration is appropriate"; granting non-signatory Defendant's motion to stay proceeding and compel arbitration). In any event, Braintech Canada, Inc., a co-defendant, executed the agreement and its assets, including the Licensing Agreement, were transferred to Braintech, Inc. in 2009. Weidinger Decl. at ¶ 4. This well-developed body of law notwithstanding, ABB pleaded itself into arbitration -- and out of this Court -- by alleging that RVT, Braintech, and Braintech Canada are operated as a single entity and are one another's alter egos. *See* Compl. at ¶ 5. This statement by ABB is in fact false, but nonetheless must be

accepted as true by the Court for purposes of determining the jurisdictional facts giving rise to the arbitrability issue.

### D. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

All of Plaintiff's allegations in the Complaint are causes of action "in connection with" the Licensing Agreement and, therefore, fall within the scope of the arbitration agreement.

First, the dispute over the Robots falls within the subject matters covered by the arbitration agreement. The Licensing Agreement speaks directly to ABB providing robots. According to the Licensing Agreement, ABB was obliged to provide Braintech with information, such as "ABB robot software" or "Sample Robot(s)," that it determines are necessary to enable Braintech to provide services to it. Licensing Agreement ¶ 12.2. Thus, any dispute over Robot possession and ownership comes within the arbitration agreement.

Second, the dispute over who has the right to possess Braintech's software codes and executables, which ABB alleges are being held in escrow, falls within the scope of the arbitration agreement. The Licensing Agreement states, in relevant part:

> "In the event BRAINTECH ceases to operate either through bankruptcy or insolvency then the LICENSEE will be able to use the BRAINTECH Software in executable and where necessary source code form for the sole purpose of supporting systems installed and paid for by any of the LICENSEE'S End-Users facilities prior to the date of business cessation;
>
> FOR GREATER CLARITY, THE LICENSEE HAS NO RIGHT OF OWNERSHIP OR RIGHT TO SELL THE BRAINTECH SOFTWARE IN THE EVENT THAT BRAINTECH CEASES TO OPERATE FOR WHATEVER REASON..."

Licensing Agreement ¶ 27.1-2.

It is for a panel of arbitrators, and not a court, to decide precisely what if anything was intended by, or results from, this understanding. ABB's self-serving interpretation that this language means it is entitled by mandatory injunction from this Court to immediate possession

8

and unfettered access to any such materials is diametrically opposed to RVT's belief that it purchased the source code and has sole access, possession and ownership thereof.

Finally, the dispute over trademark infringement issues is also within the scope of the arbitration agreement. Licensing Agreement Paragraphs 17 and 18 explain the parties' rights with respect to each other's "Proprietary Information, Trademarks, Technology, or any part thereof…" Thus, disputes over the parties' use of trademarks are covered by the arbitration agreement.

### E. Because Plaintiff's Claims are Subject to a Valid Arbitration Agreement, This Court Should Dismiss Plaintiff's Complaint

The FAA provides that where claims are properly referable to arbitration under a valid arbitration agreement, and a party moves to compel arbitration, a court shall stay the proceedings until the arbitration process is complete. 9 U.S.C. § 3. This Court has also recognized, however, that when *all* claims in a matter are referable to arbitration, dismissal is the preferred method of case disposition. *See, e.g., Shammami v. Broad St. Sec., Inc.*, 544 F.Supp. 2d 585, 588 (E.D. Mich. 2008) (observing that "'[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration'" and granting motion to compel arbitration and dismissing Plaintiff's claims); *Williams Int'l Co. v. New West Machine Tool Corp.*, 2010 WL 331714, at *5 (E.D. Mich. Jan. 22, 2010) (observing that "[c]ourts have held, however, that when the court determines that all the claims in a cause of action are to be submitted to arbitration, it may dismiss, rather than stay the action because 'staying the action will serve no purpose'"). Here, all of Plaintiff ABB's disputes and causes of action are subsumed within the broad arbitration language in the Licensing Agreement. Therefore, this Court should grant Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint.

### F. Alternatively, This Court Must Stay the Proceedings Pending the Arbitration of Plaintiff's Claims

The FAA provides that if a written arbitration agreement is valid and enforceable, a party to an arbitration agreement may move a court in which the arbitrable claim is brought to compel arbitration. Thus, at a minimum, if this Court compels arbitration, any further judicial intervention must be stayed pending arbitration. 9 U.S.C. §§ 2, 3, 4; *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (observing that, as the FAA "manifest[s] a 'liberal federal policy favoring arbitration agreements,'" it "provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement"). This is particularly so with respect to the injunctive relief Plaintiff now seeks. *See, e.g., Audia v. Newcor, Inc.*, 2010 WL 2898515, at *6-7 (E.D. Mich. July 23, 2010) (denying Plaintiffs' motion for preliminary injunction and directing Plaintiffs to proceed with arbitration, noting that "Plaintiffs have not explained why they should be permitted to pursue these contractual benefits, while at the same time eschewing an obligation, set forth in a nearby paragraph of the very same contract, to arbitrate any disputes over the interpretation or application of the terms of the [Agreement]," and that "Plaintiffs have not demonstrated a likelihood of success on the merits of their claims for judicial relief, where these claims are subject to arbitration under the terms of the [Agreement] giving rise to Plaintiffs' claims"); *Summit Training Source, Inc. v. Mastery Technologies, Inc.*, 2000 WL 35442327, at *9 (W.D. Mich. June 1, 2000) (denying Plaintiff's application for preliminary injunction and compelling arbitration, and, in considering the factors for injunctive relief, noting that "[b]ecause the parties have agreed to arbitrate the merits of their dispute, the court is reluctant to express strong views on [the likelihood of plaintiff's success on the merits] factor," and, "[a]dditionally, and perhaps most importantly, the public interest requires that [Plaintiff] be

10

held to its agreement to arbitrate the dispute"). Because Plaintiff's claims, including its recent demand for injunctive relief, are subject to the parties' mandatory arbitration provision, this Court should compel Plaintiff to arbitrate all claims and dismiss or stay these proceedings.

### III. Conclusion

For all the foregoing reasons, RVT respectfully submits that this Court enter an Order dismissing Plaintiff's Complaint and compelling arbitration, or, in the alternative, staying proceedings, denying injunctive relief to Plaintiff, and compelling arbitration.

/s/ Geoffrey J. Greeves
Geoffrey J. Greeves
Geoffrey.greeves@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone:  202-663-8000
Facsimile:  202-663-8007
Attorney for Defendant RoboticVISIONTech, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2010, a copy of the foregoing Motion to Compel Arbitration was filed through the Court's electronic filing system (ECF) and that such filing was served electronically by the ECF system on all counsel of record at the email addresses disclosed on the Notice of Electronic Filing receipt. I hereby certify that I have also served via email the Motion to Compel Arbitration on Jeff Young, Esq., Counsel for ABB, Inc.

/s/ Geoffrey J. Greeves
Geoffrey J. Greeves
Geoffrey.greeves@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone: 202-663-8000
Facsimile: 202-663-8007
Attorney for Defendant RoboticVISIONTech, LLC