IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABB INC.,

    Plaintiff,

v.

ROBOTIC VISIONTECH, LLC,
BRAINTECH, INC., and BRAINTECH
CANADA, INC.

    Defendants.

Case No. 2:2010cv12626

Hon. John Corbett O'Meara

**PLAINTIFF'S RESPONSE AND PARTIAL CONSENT TO DEFENDANT ROBOTIC
VISIONTECH LLC'S MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES……………………………………………………………………..ii

FACTUAL BACKGROUND ……………………………………………………………………1

I. APPLICABLE LAW………………………………………………………………..3

II. THE PARTIES' POSITIONS AT THIS JUNCTURE …………………………………..5

III. ABB'S CONVERSION CLAIM ARE NOT SUBJECT TO ANY ARBITRATION AGREEMENT AND CANNOT BE COMPELLED TO ARBITRATION ……………………………………………………………………6

CONCLUSION …………………………………………………………………………….7

LAW OFFICES
**SOMMERS SCHWARTZ, P.C.**
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

i

## **INDEX OF AUTHORITIES**

**CASES**

*Arthur Andersen LLP v. Carlisle*, 556 U.S. ----, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ....... 4, 6

*Carlisle v. Curtis, Mallet-Prevost, Colt & Mosle, LLP*, 521 F.3d 597 (6th Cir.2008) ................... 4

*DSMC Inc. v. Convera Corp.*, 349 F.3d 679 (D.C.Cir.2003) ......................................................... 4

*Kimberlin v. Renasant Bank*, 295 Fed. Appx. 18, (6th Cir. 2008) .................................................. 4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) ................................. 6

**STATUTES**

MCL § 600.2919a ........................................................................................................................ 6, 7

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

ii

**FACTUAL BACKGROUND**

The following facts as alleged in the pleadings and other matters or record are not disputed. Plaintiff ABB Inc. ("ABB") entered into an "Exclusive Global Channel Partner Agreement for the Licensing of Braintech's Vision Guided Robotics Technologies and Software Products" (the "Licensing Agreement") with Defendant Braintech Canada Inc. ("Braintech Canada").[1] (See D. 12 at Exh. B). That Licensing Agreement specifically stated that ABB was to have access to certain software code and executables placed in escrow in the event Braintech Canada ceased operations – access ABB needed in order to service customers who had purchased ABB products utilizing Braintech Canada technology. ABB does acknowledge the Licensing Agreement between it and Braintech Canada contains an arbitration provision.

On February 24, 2009, and several years subsequent to execution of the 2006 Licensing Agreement, ABB entered into a Letter of Clarification with Defendant Braintech Inc. ("Braintech"). That Letter resolved certain disputes between the parties, required Braintech to place certain code and executables in escrow, but <u>did not</u> contain an arbitration clause. (Exh. A).

Last, on July 1, 2009, ABB and Braintech entered into an "Equipment Loan Agreement" pursuant to which ABB loaned Braintech the two robots specifically identified in its Complaint. (Exh. B; *See* D. 1 at ¶¶ 19-20, 25-26, 27-36). The Equipment Loan Agreement was a stand-alone agreement, that did not reference either the Licensing Agreement or the Letter of Clarifications. (*Id.*). It also did not contain an arbitration provision. (*Id.*). Finally, the Equipment Loan Agreement contained a broad integration clause:

---

[1] The version of the Licensing Agreement attached to the Declaration of Federick Weidinger, and filed in support of Defendant Robotic VISIONTech, LLC's ("RVT") Motion to Compel Arbitration, that RVT claims is not confidential is unexecuted. (D. 12 at Exh. B). The executed version, which ABB will provide to the Court, if necessary, for *in camera* review or subject to a suitable Protective Order, is clearly marked "CONFIDENTIAL."

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

>This Agreement, including the attachments, constitutes the entire agreement between the parties with respect to its subject matter, and supersedes all previous communications, representations, understanding and agreement, either oral or written, between the parties. This Agreement shall be modified only by an instrument in writing and signed by duly authorized representatives of the parties.

(Exh. B at § 14(E)).

Braintech and Braintech Canada eventually ceased operations (although they both appear to technically still exist as corporations) sometime earlier this year.  It also undisputed that in June of 2010, Defendant Robotic VISIONTech, LLC ("RVT"), through Frederic Weidinger, the former CEO of Braintech who is now President of RVT, acquired all of Braintech's assets.  RVT then effectively shut down Braintech and Braintech Canada, and worked to cut off ABB's guaranteed right of access to the code and executables.

On July 1, 2010 ABB initiated this action seeking a declaratory judgment that it has a right of access to the Braintech code and executables currently held in escrow by the law firm of Pepper Hamilton, and raising various claims arising from the Defendants improper use of ABB's trademarks on their various websites, and for damages arising from the conversion of the robots ABB loaned to Braintech that, despite repeated demands, the Defendants have refused to return. RVT and RVT alone has now appeared in this action seeking to enforce an arbitration agreement to which it is not a party.

Importantly, Defendant RVT did not formally demand arbitration until August 12, 2010, and after being served with ABB's Complaint, and Motion for Temporary Restraining Order and Preliminary Injunction.  A copy of the August 12, 2010 letter from Geoffrey Greeves, counsel for RVT, to counsel for ABB formally demanding arbitration is attached as Exhibit C.

2

That letter is from counsel for RVT, and demands arbitration for RVT **only**. Despite diligent efforts, ABB has been unable to serve Braintech and Braintech Canada. As those Defendants have not appeared in this action, they have not demanded arbitration. Additionally, Mr. Greeves has indicated repeatedly he does not represent either Braintech or Braintech Canada. (Exh. D). Thus, RVT's Motion can relate to RVT only.

Finally, ABB notes that, as a result of ABB's inability to effectuate service on Braintech and Braintech Canada, it appears proper for the Court to adjourn the pending Motion for Temporary Restraining Order and Preliminary Injunction until such time as ABB can obtain service on Braintech and/or Braintech Canada. Accordingly, ABB will continue its efforts to serve Braintech and Braintech Canada, and then decide whether to pursue its Motion for Temporary Restraining Order and Preliminary Injunction upon learning respective position(s) those entities take on arbitration of the claims asserted against them in this action.

### I.  APPLICABLE LAW

Upon receiving RVT's Motion to Compel arbitration on August 12, 2010, counsel for ABB was initially surprised that RVT – with whom ABB has no contractual relationship – was seeking to enforce an arbitration clause in a Licensing Agreement to which it is not a party. ABB duly researched the two unpublished district court cases cited in RVT's Motion, and others, on the issue of whether a non-party to an arbitration agreement could move to compel arbitration.

Just over one year ago, the answer to this question in the Sixth Circuit was "no": a non-party to an arbitration agreement could not force a party to arbitrate. In *Kimberlin v. Renasant Bank*, 295 Fed. Appx. 18, (6th Cir. 2008), the Sixth Circuit expressly held that a non-party could not bring a motion to compel arbitration. *Kimberlin* followed the Sixth Circuit's prior decision in *Carlisle v. Curtis, Mallet-Prevost, Colt & Mosle, LLP*, 521 F.3d 597 (6th Cir.2008), where the court specifically concluded that:

> Section 4 [of the FAA] does not merely require that there be a written agreement somewhere in the picture ... but that the motion to compel be based on an alleged failure to arbitrate under that written agreement. Even assuming that the issues involved in the [underlying] litigation and the [plaintiff v. non-party] *21 arbitration are identical, intertwined, closely related, whatever-a matter of hot dispute-the litigation may not be stayed under Section 3 because the issues in the litigation are not referable to arbitration under an agreement.

*Carlisle*, 521 F.2d at 601, *quoting DSMC Inc. v. Convera Corp.*, 349 F.3d 679, 683-684 (D.C.Cir.2003).

On May 18, 2009, this body of law changed via decision of the United States Supreme Court. On that date, the Supreme Court granted certiorari, vacated *Kimberlin* and remanded it for further consideration in light of the ruling in *Arthur Andersen LLP v. Carlisle*, 556 U.S. ----, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009), which held that a non-party to an arbitration agreement could move to compel arbitration if state law allowed it. In other words, until May 18, 2009 of last year, RVT's attempt as a non-party to compel arbitration here would have been summarily rejected.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

After consideration of this line of cases (none of which, interestingly, are mentioned in RVT's Motion) in the two business days and one weekend since receiving RVT's Motion and arbitration demand, ABB agrees that while there are arguments to the contrary, it is likely this Court would conclude, on these facts, that RVT as a non-party could demand arbitration of the claims brought against it by ABB pursuant to the arbitration clause in the Licensing Agreement. Thus, ABB believes it is in the interests of the parties, and judicial economy, to consent to certain portions of RVT's Motion.

## II.     THE PARTIES' POSITIONS AT THIS JUNCTURE.

After reviewing this changing and dynamic area of the law, and reaching the conclusion set forth above, counsel for ABB contacted counsel for RVT and sought an agreement on a consensual referral of the matter to arbitration. Counsel for RVT responded by conditioning any such agreement on ABB's payment of $25,000 in RVT's attorney's fees, despite there being no factual, legal, contractual or statutory basis for such a demand. A copy of the August 16, 2010 e-mail from Mr. Geoffrey Greeves, counsel for RVT to Kevin Stoops and Jeffrey M. Young, counsel for ABB, is attached as Exhibit E. Not surprisingly, ABB rejected this demand.

Instead, ABB submits that at this juncture, the following is the proper disposition of the case. ABB is actively attempting to serve Braintech and Braintech Canada, but they have not appeared in the case nor have they demanded arbitration. Only RVT has appeared, and only RVT has demanded arbitration. Thus, this case, as to Braintech and Braintech Canada should remain here, in this Court.

As to RVT, ABB consents to the referral of all of its claims against RVT to arbitration except for Counts I (common law conversion) and II (statutory conversion, MCL § 600.2919a) of ABB's Complaint. Those claims, which arise from an essentially undisputed theft of ABB's robots, are not subject to arbitration and must remain pending before this Court.

### III. ABB'S CONVERSION CLAIM ARE NOT SUBJECT TO ANY ARBITRATION AGREEMENT AND CANNOT BE COMPELLED TO ARBITRATION.

ABB agrees with RVT that whether a dispute is subject to arbitration is a two step process. First, the parties (or non-parties, if they meet the criteria set fort in *Kimberlin* and *Arthur Andersen, supra*) must have agreed to arbitrate their disputes and second, the dispute in question must fall within the scope of the arbitration agreement. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626-28 (1985).

Without question, ABB's conversion claims are not arbitrable. The conversion claims arise from a separate, stand-alone "Equipment Loan Agreement" executed by ABB and Braintech years after the Licensing Agreement. (Exh. B). The Equipment Loan Agreement does not contain an arbitration provision. It does not refer to the Licensing Agreement or the Letter of Clarification that followed it in any way.

Yet, RVT contends that vague references in the Licensing Agreement (which predated the Equipment Loan Agreement by some three years) to ABB providing Braintech with "Sample Robot(s)" – quite different from a loan – somehow requires ABB to submit its undisputed conversion claims to arbitration. This argument is laughable. To be sure, this argument flies directly in the face of the broad integration clause contained in the Equipment Loan Agreement:

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

> This Agreement, including the attachments, constitutes the entire agreement between the parties with respect to its subject matter, and supersedes all previous communications, representations, understanding and agreement, either oral or written, between the parties. This Agreement shall be modified only by an instrument in writing and signed by duly authorized representatives of the parties.

(Exh. B at § 14(E)).

Buttressing this conclusion is the fact that the arbitration clause found at paragraph 23.2 of the Licensing Agreement (D. 12 at Exh. B) specifically states that it only covers disputes arising in connection with "this Agreement" – meaning the Licensing Agreement itself. It does not cover disputes arising under any other agreement, such as the Equipment Loan Agreement. Thus, there can be no question that ABB's conversion claims against RVT cannot be compelled to arbitration and must remain before this Court.

## CONCLUSION

For the reasons set forth above, Plaintiff, ABB Inc., requests that the Court enter an Order:

1. Retaining jurisdiction of Plaintiff's claims against Defendants Braintech Inc., and Braintech Canada, Inc., until such time as those Defendants are served, and their respective position(s) on arbitration is determined;

2. Retaining jurisdiction over Defendant Robotic VISIONTech, LLC, with respect to Counts I (common law conversion) and II (statutory conversion, MCL § 600.2919a) of Plaintiff's Complaint;

3. Adjourning Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction until such time as Plaintiff can obtain service on Defendants Braintech Inc., and Braintech Canada, Inc.; and

4. Denying any other relief sought by Defendant Robotic VISIONTech, LLC.

LAW OFFICES
SOMMERS SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

/a/Kevin J. Stoops (P64371)
SOMMERS SCHWARTZ, PC
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: (248) 355-0300
Facsimile: (248) 936-2143
kstoops@sommerspc.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Geoffrey J. Greeves; Geoffrey.greeves@pillsburylaw.com

s\Kevin J. Stoops
KEVIN J. STOOPS (P64371)
SOMMERS SCHWARTZ, P.C.
Attorney for Defendant
2000 Town Center, Suite 900
Southfield, Michigan  48075-1100
(248) 355-0300
kstoops@sommerspc.co