

EQUIPMENT LOAN AGREEMENT

This EQUIPMENT LOAN AGREEMENT (the "Agreement") made this <u>1st day of July, 2009</u> (the "Effective Date") is between ABB Inc., with a place of business at 1250 Brown Rd., Auburn Hills, MI 48326 (hereinafter referred to as "ABB") and <u>Braintech, Inc.</u>, with a place of business at <u>2001 Centerpoint Parkway, Suite 103, Pontiac, Michigan 48341</u> (hereinafter referred to as "Company").

ABB hereby agrees to loan to Company, without charge, the equipment identified as an <u>IRB 6600 IRC5 Robot and controller with the serial number of 66-52030 and IRB140 S4C+ robot and controller with the serial number 14-11506</u> (hereinafter referred to as the "Loaned Equipment") for the purpose specified in Section 1 hereof upon the terms and conditions stated herein.

Section 1. Purpose. This Agreement is entered into <u>so the Company may use to generate further improvement of the eVF software platform by Braintech.</u>

Section 2. Term/Scope of Agreement. This Agreement shall commence on the Effective Date and shall continue in full force and effect until the Loaned Equipment is returned to ABB <u>on December 31, 2009,</u> unless otherwise agreed upon in writing. ABB reserves the right to terminate this Agreement without cause on 30 day prior written notice. ABB may immediately terminate this Agreement without notice if Company breaches any provision of the Agreement, or if Company becomes insolvent or makes an assignment for the benefit of creditors, or if any insolvency proceedings are initiated by or against Company, or if the Loaned Equipment or any part thereof is encumbered, pledged, or attached, seized or taken under any judicial process, and in such an event ABB shall be entitled to immediate possession of the Loaned Equipment at Company's expense. Company shall return to ABB the Loaned Equipment in the same condition as delivered, reasonable wear and tear excepted

Section 3. Transportation/Risk of Loss or Damage. Company will arrange for and pay all freight to the site, demurrage, storage, unloading, assembly, disassembly, handling charges and any special packing, crating, documentation, export and tariff papers and customs clearances or other charges against Loaned Equipment incurred during the term of this Agreement. Company is responsible for damage to or loss of Loaned Equipment during transit to the site, and is responsible for inspecting and inventorying Loaned Equipment, obtaining written acknowledgements from the carrier, and filing claims for any damage loss or shortage occurring during shipment to the site. Risk of loss shall pass to Company upon shipment by ABB and any damage, loss or shortage which occurs thereafter during the term of this Agreement shall be repaired or replaced at the expense of Company, to the satisfaction of ABB.

Section 4. Location. The Loaned Equipment will be located at <u>Braintech, Inc.</u> for the term of this Agreement. The Loaned Equipment shall not be moved from Company's premises (at the address specified below) without the prior written consent of ABB

<u>Attn: Jerry Osborn, (248) 467-4823</u>
<u>2001 Centerpoint Parkway, Suite 103</u>
<u>Pontiac, MI 48341</u>

Section 5. Ownership of Equipment. Title to the Loaned Equipment shall at all times remain in ABB.

Section 6. Warranty. This transaction is not a sale of goods. ABB makes no warranty either express or implied to Company or any other person. NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE SHALL APPLY. ABB is responsible only for providing Loaned Equipment meeting the description stated herein.

Section 7. Support, Installation and Maintenance. Company accepts Loaned Equipment "as-is" and agrees ABB has no support, installation or maintenance responsibilities for the Loaned Equipment while on loan to Company.

Section 8. Notice. Any notice or communication required or permitted hereunder shall be sufficiently given if delivered or mailed by certified mail, postage prepaid, to the following names and addresses:

| If to Company: | If to ABB: |
|---|---|
| Attn: JERRY OSBORN | Attn: Kinda Bradley |
| BRAINTECH | ABB Inc. |
| 2001 CENTERPOINT PKWY, STE. 103 | 1250 Brown Rd. |
| PONTIAC, MI 48341 | Auburn Hills, MI 48326 |

Section 9. Indemnification and Liability. Company shall defend, indemnify and hold harmless, ABB, its affiliated companies and their officers, agents and employees from and against all claims, loss, levy, penalties, liability or expense, including legal expenses, incurred by reason of any violation of any rule, regulation or law, or by reason of bodily injury including death or property damage of any character sustained during or arising out of this Agreement by any person or persons, including but not limited to Company's employees, as a result of the maintenance, use, operation, storage, erection, dismantling, servicing or transportation of Loaned Equipment or of any failure on the part of Company to comply with this Agreement. Company agrees to pay ABB for all loss and damages to Loaned Equipment occasioned by fire, theft, flood, accident, explosion, wreck, act of God or any other cause arising during the term of this Agreement. ABB is not obligated to undertake the collection of any claim arising during the term of this Agreement. Loaned Equipment damaged, destroyed, lost or seized from whatever cause, remains on loan without abatement while being repaired, or until returned. ABB shall not be liable for any loss, delay, or direct, indirect, incidental or consequential damages under this Agreement. Company guarantees to return Loaned Equipment at the conclusion of the term of this Agreement free and clear of all liens, claims or encumbrances. The indemnity and limit of liability of this section shall continue in full force and effect notwithstanding the termination of this Agreement.

Section 10. Insurance. Company agrees, at its expense, to obtain and maintain during the term of this Agreement, adequate insurance to cover any costs relating to this Agreement, with companies acceptable to ABB, for the protection of Company and ABB as their interest may appear in connection with the loan under this Agreement. Upon request of ABB, Company shall furnish ABB with certificates or other documentary evidence satisfactory to ABB, showing that insurance carried by Company in accordance with this Section has been obtained, and the policies shall be endorsed to require the insurer to furnish to ABB and Company ten (10) days written notice prior to the effective date of any insurance cancellation or change. Company's insurance policies shall name ABB as an additional insured and shall waive subrogation.

Section 11. Inventions and Information. Unless otherwise agreed in writing by ABB and Company, all right, title and interest in any inventions, developments, improvements or modifications of or for Loaned Equipment shall remain with ABB. Any design, manufacturing drawings or other information submitted to the Company remains the exclusive property of ABB. Company shall not, without ABB's prior written consent, copy or disclose such information to a third party. Such information shall be used solely for the operation or maintenance of the Loaned Equipment and not for any other purpose, including the duplication thereof in whole or in part.

Section 12. Self Help. In the event that Company fails to either (a) remit payment for the Loaned Equipment, if applicable, or (b) return the robot in accordance with the terms of this Agreement, Company hereby grants to ABB a license to enter upon the site and to retake the Loaned Equipment. Company acknowledges and agrees that ABB's exercise of its rights under this section is in addition to, and not in substitute for, any and all other rights, at law or in equity, that ABB may possess with respect to Company's failure to pay for or to return the Loaned Equipment.

Section 13. Alterations. Company shall not, without the prior written consent of ABB, alter or modify the Loaned Equipment or affix any accessory, equipment, or device thereto

Section 14. General Provisions.

   A. This Agreement shall be governed and construed under the laws of the State of New York but excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and excluding New York law with respect to conflicts of law.
   B. The obligations under this Agreement shall not be assigned or transferred by Company without the written approval of ABB, and any attempted assignment or transfer without such consent shall be void. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, successors and authorized assigns.
   C. If any provision hereof, partly or completely, shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision or portion hereof and these terms shall be construed as if such invalid or unenforceable provision or portion thereof had never existed.
   D. Company represents and warrants that the Loaned Equipment and any "direct product" thereof are intended for civil use only and will not be used, directly or indirectly, for the production of chemical or biological weapons or of precursor chemicals for such weapons, or for any direct or indirect nuclear end use. Company agrees not to disclose, use, export or re-export, directly or indirectly, any information provided by ABB or any "direct product" thereof as defined in the Export Control Regulations of the United States Department of Commerce, except in compliance with such Regulations
   E. This Agreement, including the attachments, constitutes the entire agreement between the parties with respect to its subject matter, and supersedes all previous communications, representations, understanding and agreement, either oral or written, between the parties. This Agreement shall be modified only by an instrument in writing and signed by duly authorized representatives of the parties.
   F. The failure of ABB to enforce any provision of this Agreement shall in no way be construed as a waiver of such provision and shall not affect the right of ABB at a later time to enforce each and every such provision.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

| ABB INC. | BrainTech |
|---|---|
| By: _____ | By: *[signature]* |
| Printed: _____ | Printed: F. W. WEIDINGER |
| Title: _____ | Title: CEO |
| Date: _____ | Date: 7-17-09 |

ABB INC.

By: _____

Printed: _____

Title: _____

Date: _____