**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ABB INC.,

                Plaintiff,

      v.

ROBOTIC VISIONTECH, LLC,
BRAINTECH, INC., and BRAINTECH
CANADA, INC.

             Defendants.

**Case No. 5:10-cv-12626-JCO-PJK**

**Judge John Corbett O'Meara**
**Magistrate Judge Paul J. Komives**

## DEFENDANT ROBOTICVISIONTECH, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant RoboticVISIONTech, LLC ("RVT"), by and through counsel, hereby

respectfully requests this Court to deny Plaintiff's Motion for Temporary Restraining Order and

Preliminary Injunction.

In support of this Response, Defendant RVT submits the attached Memorandum.

Date: August 17, 2010

Respectfully submitted,

/s/ Geoffrey J. Greeves
Geoffrey J. Greeves
Geoffrey.greeves@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone:  202-663-8000
Facsimile:  202-663-8007
Attorney for Defendant RoboticVISIONTech, LLC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABB INC.,

               Plaintiff,

     v.

ROBOTIC VISIONTECH, LLC,
BRAINTECH, INC., and BRAINTECH
CANADA, INC.

               Defendants.

Case No. 5:10-cv-12626-JCO-PJK

**Judge John Corbett O'Meara**
**Magistrate Judge Paul J. Komives**

**DEFENDANT ROBOTICVISIONTECH, LLC'S MEMORANDUM IN SUPPORT OF ITS**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## STATEMENT OF ISSUES PRESENTED PURSUANT TO LR 7.1(d)(2)

I.  Should this Court deny Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, recognizing that injunctive relief is an extraordinary remedy and Plaintiff has not met its heavy burden of demonstrating entitlement to such relief?

Defendant RVT's Answer:     Yes

Plaintiff's Answer:            No

Court Should Answer:        Yes

## AUTHORITY FOR RELIEF SOUGHT PURSUANT TO LR 7.1(d)(2)

Fed. R. Civ. P. 65

*McGuire v. Countrywide Home Loans, Inc.*, 2007 WL 1695590 (E.D. Mich. June 11, 2007)

*Jones v. City of Monroe*, 2001 WL 1773614 (E.D. Mich. Aug. 28, 2001)

*Perotti v. Marlberry*, 2010 WL 2870968 (E.D. Mich. June 8, 2010)

*Cox v. Jackson*, 579 F.Supp.2d 831 (E.D. Mich. 2008)

*Skinner v. Unknown Grandson*, 2006 WL 1997392 (E.D. Mich. July 14, 2006)

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007)

*S.E.C. v. G. Weeks Sec., Inc.*, 678 F.2d 649 (6th Cir. 1982)

## I.  Introduction

Defendant RoboticVISIONTech, LLC ("RVT"), through its attorneys, Pillsbury Winthrop Shaw Pittman, LLP, submits this Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Opposition").  Because all of these claims are subject to mandatory arbitration, the Court need not even reach the merits of the injunction papers.[1]  Even if it does, however, ABB's evidence and theory of this case fall woefully short of what the law requires.  For the reasons articulated in this Opposition, the Court should deny Plaintiff's requested injunctive relief and this case should be dismissed.

## II.  Factual Background

ABB, Inc. ("ABB")'s Motion for Temporary Restraining Order and Preliminary Injunction (No. 5), was filed on August 4, 2010, before service was made on Defendants Braintech, Inc. and Braintech Canada Inc.  Those parties still have yet to be served with process and have no notice of the imminent hearing on Thursday August 19, 2010.  Accordingly, given the nature of the relief sought, this Court should treat ABB's application as an ex-parte application and summarily deny it as procedurally defective: "There is a procedural defect in Plaintiff's motions which prevents the relief requested.  Plaintiff seeks a preliminary injunction without giving the other parties notice. This is not allowed under Fed. R. Civ. P. 65(a)(1) and is alone sufficient reason to deny the motion." *McGuire v. Countrywide Home Loans, Inc.*, 2007 WL 1695590, at *2 (E.D. Mich. June 11, 2007) (accepting magistrate judge's report and recommendation and denying plaintiff's motion for preliminary injunction). *See also* Practice

---

[1]      RVT will seek an award of its fees at (or after) the hearing.  Given the tight Court deadlines, there was no time to prepare any documents as required by Rule 11.  RVT's subject matter jurisdiction challenge, of which ABB has been aware since July 27, 2010, should have been brought to the Court's attention by ABB pursuant to Fed. R. Civ. P. 11.  Instead, ABB was not candid with the Court about this issue and rushed headlong into an accelerated briefing schedule which caused great and unnecessary expense to RVT.   Because RVT believes this Court is without jurisdiction, it will reserve its counterclaims for arbitration.

Guidelines for Judge John Corbett O'Meara, Temporary Restraining Orders and Injunctions (providing that "[t]he Court adheres to E.D. Mich. LR 65.1 and 7.1 and rarely grants *ex parte* relief").

Although in ABB's Complaint (No. 1), filed July 1, 2010, it sought relief with respect to three claims – the return of its allegedly converted Robots and damages; a declaratory judgment that it has a right to access and use Braintech's source code and executables and/or a judgment that it has ownership thereof; and damages for several alleged Lanham Act violations related to trademark infringement – in ABB's Motion for Temporary Restraining Order and Preliminary Injunction, ABB has limited its requested relief to mandatory injunctive relief: (1) requiring the return of the Robots and (2) ordering all Defendants (as well as a custodian who is not even before the Court) to allow ABB immediate unfettered access to and use of (or alternatively ownership over) Braintech's source code and executables. All factual references herein are supported by the attached Declaration of Frederick Weidinger, dated August 17, 2010, unless otherwise stated.

With respect to Plaintiff's first requested form of relief – injunctive relief requiring the return of the Robots – RVT has already told ABB that the Robots will be returned and RVT will tender them back to ABB. These Robots, which RVT moved out of Braintech's vacant space for safekeeping, were then housed at RVT's new site in anticipation of a business-like negotiation for continuation or renewal of the lease. The lease was only recently and unilaterally terminated by Plaintiff. Unfortunately, Plaintiff has now made it clear by filing this action that it has no intention of negotiating. Furthermore, as Plaintiff well knows, it will take approximately two weeks to properly decommission, uninstall, safely pack and prepare the Robots for pick-up by ABB in an orderly fashion that is not unduly disruptive to other business. RVT estimates that

this should all be accomplished no later than August 31st.  Under the circumstances, this is solely a monetary issue between the parties and Plaintiff is suffering no harm, let alone irreparable harm, and an injunction is totally unnecessary and unwarranted.

With respect to Plaintiff's second requested form of relief – injunctive relief ordering that Plaintiff be granted access to and use of and/or ownership of Braintech's source code and executables – Plaintiff has not met the heavy burden of demonstrating that mandatory injunctive relief is necessary.

## III.  Legal Argument

In order to determine whether to issue a preliminary injunction, the Court must balance the following four factors:

"(1) the likelihood of plaintiff's success on the merits;

(2) whether the injunction will save the plaintiff from irreparable injury;

(3) whether the injunction would harm others; and

(4) whether the public interest would be served by the injunction."

*Jones v. City of Monroe*, 2001 WL 1773614, at *2 (E.D. Mich. Aug. 28, 2001), *citing In re DeLorean Motor Co. v. DeLorean*, 755 F.2d 1223, 1228 (6th Cir. 1985).[2]

The Plaintiff bears a heavy burden of demonstrating its entitlement to injunctive relief. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Perotti v. Marlberry*, 2010 WL 2870968, at *2 (E.D. Mich. June 8, 2010), *citing Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see also Roghan v. Block*, 590 F. Supp. 150, 153 (W.D. Mich. 1984), *aff'd*, 790 F.2d 540 (6th Cir. 1986) (observing that

---

[2]     This is the same standard the Court must use to determine whether to grant a Temporary Restraining Order, as well. *See, e.g., Perotti v. Marlberry*, 2010 WL 2870968 (E.D. Mich. June 8, 2010).

"[t]here is no power the exercise of which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction"); *Jones v. City of Monroe*, 2001 WL 1773614, at *1 (E.D. Mich. Aug. 28, 2001), *citing Lapeer County Medical Care Facility v. Michigan*, 765 F.Supp. 1291, 1296 (W.D. Mich. 1991) (other citations omitted) (observing that the Court of Appeals for the Sixth Circuit has warned lower courts to exercise "great caution and careful deliberation" when considering a motion for preliminary judgment). Thus, Plaintiff "may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate [its] entitlement to injunctive relief." *Perotti, supra*, at *2.

Against the backdrop of mandatory arbitration in the very contract ABB relies upon in its Complaint, the need for the Court to exercise caution and careful deliberation is especially strong. Although this Circuit has stated that it is unnecessary to apply different legal standards to mandatory and prohibitory injunctions, this Court has noted that preliminary injunctions that alter the status quo and mandatory preliminary injunctions, like the one Plaintiff seeks in this matter, are particularly disfavored types of preliminary injunctions. *See Cox v. Jackson*, 579 F.Supp.2d 831, 855 n.8 (E.D. Mich. 2008) (adopting magistrate judge's report and recommendation), *citing Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1259 (10th Cir. 2005). Accordingly, this Court has advised that "[m]otions seeking such preliminary injunctive relief most [sic] be more closely scrutinized than the already-disfavored motion for preliminary junction [sic] which seeks to maintain the status quo." *Id*. When determining whether to grant a mandatory injunction, "the requested relief should be denied *unless the facts and law clearly favor the moving party*." *Skinner v. Unknown Grandson*, 2006 WL 1997392, at *12 (E.D. Mich. July 14, 2006) (emphasis added) (adopting magistrate judge's report and recommendation), *citing Glauser-Nagy v. Medical Mut. of Ohio*, 987 F.Supp. 1002, 1011 (N.D. Ohio 1997).

Plaintiff's motion papers fail to meet the heavy burden of demonstrating an entitlement to injunctive relief. Only one of the three Defendants has been served with process. Moreover, Plaintiff is not asking for an injunction to maintain the status quo, but instead, asks the Court to alter the status quo[3] to grant it *immediate* access, use, and/or ownership of the Braintech source code and executables. Therefore, the Court must determine that the facts and law clearly favor Plaintiff before issuing injunctive relief, something it likely will be unable to do with the scant "evidence" ABB has proffered. For the reasons set forth below, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction must be denied.

### A. Plaintiff has not Demonstrated a Strong Likelihood of Success on the Merits or a Threat of Irreparable Harm

### 1. The Plaintiff Will Not Succeed on the Merits of its Claim

To obtain injunctive relief, Plaintiff must first demonstrate a strong likelihood that: (1) there exists a legally-cognizable escrow agreement, the conditions of which have been met, triggering Plaintiff's claimed right to access and use the Braintech source code and executables at issue; or (2) that by making its contractually-obligated payments to Braintech, pursuant to the parties' Licensing Agreement, Plaintiff acquired some form of constructive trust in Braintech's source code and executables, requiring that ownership of the source code and executables be transferred to ABB. This legal determination must be coupled with an equitable determination that allowing Defendant RVT to maintain exclusive possession would constitute unjust enrichment. Plaintiff has not demonstrated a likelihood of success on the merits concerning either of those claims, nor can it.

---

[3]    A member of the bar of this Court -- James VandeWyngearde, Esq., of Pepper Hamilton LLP in Detroit, MI -- is currently in possession of Braintech's source code and executables. He has refused to release the property to either Plaintiff or Defendants, pending resolution of this dispute. Neither he nor his firm are parties to ABB's requested relief.

As an initial matter, Plaintiff has absolutely no likelihood of prevailing on the merits in a United States District Court, since all its claims must be arbitrated, not litigated. RVT informed counsel of its position regarding mandatory arbitration on July 27th and, almost immediately after it was served, RVT filed its own Motion seeking a dismissal. *See* Defendant RVT's Motion to Compel Arbitration (No. 12), filed 8/12/2010.[4] RVT's arguments submitted in support of that motion are incorporated by reference in this Opposition.

Furthermore, Plaintiff also has no likelihood of prevailing on the merits of its case as presently constituted, because it has not named the property's custodian, James VandeWyngearde, Esq., as a party. Under Federal Rule of Civil Procedure 65(d)(2), an order granting an injunctive relief binds only the parties to the case; the parties' officers, agents, servants, employees, and attorneys; and other persons in active concert or participation with those individuals or organizations. Mr. VandeWyngearde is employed by the law firm Pepper Hamilton LLP, whom Plaintiff alleges is the escrow agent. While RVT disputes that Mr. VandeWyngearde is an escrow agent, it undisputed that Braintech's source code and executables are presently in Mr. VandeWyngearde's possession because, as Braintech's former attorney, he was a depository for Braintech's source code and executables. Mr. VandeWyngearde is not and has never been RVT's attorney or its agent, and he has refused to turn over the source code to RVT despite its title rights. If the Court were presently to order the injunctive relief requested by Plaintiff, such relief would not be effective against Mr. VandeWyngearde because he is not a

---

[4]     There, RVT demonstrated that because all of ABB's allegations in the Complaint are causes of action "in connection with" the Licensing Agreement, they are governed by the Licensing Agreement's arbitration agreement. In its most recent pleading, ABB's affiant admitted that the Licensing Agreement is the only reason it loaned the Robots to Braintech. *See* Declaration of James Connelly ¶ 27, attached to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (No. 5), filed 8/4/2010. Accordingly, that dispute (if it even exists considering RVT's commitment to tender the Robots back to ABB) must be arbitrated.

party.  For unknown reasons, ABB has not chosen to make him a party or given him notice of these proceedings.

Accordingly, Plaintiff has no likelihood of succeeding on the merits.  The Court of Appeals in the Sixth Circuit has observed that a finding of no likelihood of success is "usually fatal." *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006), *citing Gonzales v. Nat'l Board of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).  However, assuming *arguendo* that the Court had jurisdiction to hear Plaintiff's claims and a representative of the "escrow agent" was properly joined as a party to the matter, Plaintiff's likelihood of prevailing on the merits is nonetheless extremely remote.

Plaintiff's claim centers around the notion that it entered into an escrow agreement with Braintech concerning Braintech's source code and executables; that the conditions of the escrow agreement have been met; and that, therefore, it should be granted access to and use of the code and executables.  The claim is not as clear as ABB states it to be.

Under Michigan law, "the duties and liabilities imposed upon an escrow agent are those set forth in the escrow agreement." *Smith v. First Nat'l Bank & Trust Co. of Sturgis*, 440 N.W.2d 915, 917 (Mich. Ct. App. 1989).  If the escrow agreement is ambiguous, "the facts and circumstances surrounding the creation of the agreement may be considered." *Id.*  That body of case law assumes the existence of an escrow agreement.  However, it is not applicable here because despite passing reference made to an intention to place property in escrow in the ABB-Braintech Licensing Agreement and other related documents, the parties never actually executed an escrow agreement to effectuate that language.  James VandeWyngearde, Braintech's former attorney, served as a depository for Braintech's source code and executables.  However, neither he nor his law firm are or have ever been escrow agents under an escrow agreement.  If a legally-

cognizable escrow agreement did exist, Plaintiff would presumably be able to provide Mr. VandeWyngearde with binding instructions regarding the conditions under which the Braintech source code and executables could be released to Plaintiff.  This has not occurred, because instructions and conditions, *i.e.*, such an escrow agreement, do not exist.  This is not a situation in which the terms or conditions of the escrow agreement are ambiguous and the court may look to the intent of the parties in determining when certain conditions have been triggered.  Instead, the very existence of the escrow agreement is in dispute and thus cannot form the basis for Plaintiff's requested injunctive relief.

According to Mr. Weidinger, the Licensing Agreement terminated on December 31, 2008 without any escrow arrangements.  The parties' effort to set up an escrow in the Letter of Clarification, dated February 24, 2009, also failed because there were no conditions or circumstances under which any deposited materials would be released to ABB.  Moreover, the Letter of Clarification makes it abundantly clear that the customer warranty period lasted 12 months from the date ABB delivered a license from inventory.  RVT submits that this period has now expired and ABB has not made any warranty claims.

Second, there is no truth to Plaintiff's claim that because it paid Braintech contractually-required sums, per the parties' Licensing Agreement, it has somehow obtained a constructive trust on the Braintech source code and executables.  Rights under the Licensing Agreement were limited and certainly cannot trump Defendant RVT's rights as a good faith purchaser for value.  The Licensing Agreement speaks directly and unmistakably to this issue.  *See* Licensing Agreement at Section 27.2 "THE LICENSEE HAS NO RIGHT OF OWNERSHIP OR RIGHT TO SELL THE BRAINTECH SOFTWARE IN THE EVENT THAT BRAINTECH CEASES TO OPERATE FOR WHATEVER REASON;" (capitalization in original).

Plaintiff cannot assert that it has acquired a constructive trust over Braintech's source code and executables.  Under Michigan law, "whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances, which render it unconscionable for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same." *In re Cyberco Holdings, Inc.*, 382 B.R. 118, 129 (Bankr. W.D. Mich. 2008).  None of these requirements is met here.  Plaintiff's assertions that RVT bought the assets of Braintech via a "sham purchase" at a private auction sale are ill-informed speculation – not evidence.  RVT is a limited liability company organized and properly formed under the laws of Nevada.  RVT is in good standing in the Commonwealth of Virginia.  In May 2010, it participated in a well-advertised public auction for the Braintech assets and made a winning bid.  The auction was so well-advertised, in fact, that Plaintiff knew of the event in advance, yet chose not to participate or assert any claim to the Braintech assets.

Plaintiff also cannot assert that RVT has been unjustly enriched by its purchase of Braintech's assets, including Braintech's source code and executables.  Under Michigan law, to sustain an unjust enrichment claim, the plaintiff must show "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003).  If these factors are established, the law will imply a contract in order to prevent unjust enrichment.  However, "a contract will be implied only if there is no express contract covering the same subject matter." *Hudson v. Mathers*, 770 N.W.2d 883, 887 (Mich. Ct. App.

2009).  First, RVT has not received nor retained any direct benefit from Plaintiff by purchasing

the assets of Braintech.  Second, ABB admits there *is* an express contract purporting to govern

the subject matter at issue: the Licensing Agreement between Plaintiff and Braintech.  Pursuant

to the Licensing Agreement, Plaintiff purchased software licenses from Braintech.  Each

payment from Plaintiff to Braintech was documented by a detailed purchase order from Plaintiff,

depicting the type and number of software licenses Plaintiff intended to purchase.  This point is

so clear that there was a memorialized disclaimer of title -- in all caps -- in the documents

Plaintiff tendered to the Court stating that Plaintiff could never obtain any ownership interest in

or rights to Braintech's source code and executables:  "THE LICENSEE HAS NO RIGHT OF

OWNERSHIP OR RIGHT TO SELL THE BRAINTECH SOFTWARE."  Accordingly,

Plaintiff's unjust enrichment theory fails.

### 2. Plaintiff Is Unlikely to Suffer Irreparable Harm Absent an Injunction

In determining whether Plaintiff has shown that it will likely suffer irreparable harm in

the absence of injunctive relief, the Court "must evaluate three factors: '(1) the substantiality of

the injury alleged, (2) the likelihood of its occurrence, and (3) the adequacy of the proof

provided.'"  *Cox v. Jackson, supra,* at 854, *citing Ohio ex rel. Celebrezze v. Nuclear Regulatory

Comm'n,* 812 F.2d 288, 290 (6th Cir. 1987).  ABB's attorney/witness, James Connelly, surmises

in a conclusory fashion that immediate, irreparable harm will result – such as an inability to

service its customers and a resulting loss of customer goodwill and future business opportunities.

However, Mr. Connelly fails to offer any cognizable or admissible evidence beyond his

speculation.

Additionally, Plaintiff has failed to account for its lengthy delay in seeking extraordinary

injunctive relief.  Plaintiff knew of the auction in advance; yet it declined to attend the auction,

never asserted any lien or ownership rights, did not bid, and never tried to stop the auction. It also has never informed RVT or Braintech of any warranty claims or the like. It is only now, several months after the auction – when the business negotiations ended, that the Plaintiff apprises the Court of immediate, irreparable harm, due to an alleged inability to service its customers. However, ABB fails to point to any evidence, *e.g.*, an increase of customer service requests between the time of the auction and the filing date of its Motion for Temporary Restraining Order and Preliminary Injunction or even one specific customer with an unfilled servicing need, to support such a concern.

### 3. Plaintiff has Failed to Proffer Admissible Proof of Irreparable Harm or Likelihood of Success on the Merits

As alluded to above, the Declaration of James Connelly does not identify any specific facts regarding a single pending warranty claim or customer service obligation that requires immediate access to the executable eVF program, let alone RVT's source code, to address. Mr. Connelly likewise fails to identify any factual instance during the course of the entire contract that required access to the source code, and fails totally to address Defendant RVT's continuing ability or even alleged inability to comply with warranty and servicing obligations if and when they might arise. Instead he offers to the Court conclusory speculations that he thinks ABB might be disadvantaged *if* a warranty claim arises, *if* RVT fails to address that claim, and *if* that claim requires plaintiff to access the source code to remedy the hypothetical situation. This speculative evidentiary basis is all Plaintiff's Declaration provides, and it should be disregarded as wholly inadequate. In this case, even were Plaintiff's Declaration to pass evidentiary muster (which it clearly does not), there can be no doubt from Defendant's counter declaration that the facts are hotly disputed between the parties. It is respectfully submitted that those disputes must be resolved by an arbitral tribunal and not this court. In these circumstances, it would be entirely

improper for a mandatory injunction to be granted on the papers submitted by Plaintiff in support

of its application for preliminary injunction.  In this Circuit, it is axiomatic that:

> "the proof required for the plaintiff to obtain a preliminary injunction is much
> more stringent than the proof required [on] a summary judgment motion."

*Leary v. Daeschner*, 228 F.3d 729, 739  (6th Cir. 2000).  Under that standard, Plaintiff's

declaration is woefully inadequate.

### a. Affidavits and Declarations Must Contain Evidence That Would Be Admissible at Trial

The substantive allegations of an affidavit or declaration may not be based on

information and belief, but must be based on personal knowledge.  It must consist of admissible

evidence in order properly to be considered in connection with the motion.  The declaration, in

addition to presenting admissible evidence, must be sufficiently specific to support the affiant's

position.  Affidavits and declarations that contain nothing more than conclusory allegations or

speculation that proffer legal conclusions supporting movant's position, but are not buttressed

with factual support expressed in the affidavit or declaration are not sufficient.  *Allen v.*

*Coughlin*, 64 F.3d 77, 80 (2d Cir. 1995) (conclusory affidavits that stated that newspaper

clippings could threaten prison security were insufficient to establish affiant's position in that no

specific examples were cited); *Rosemary B. v. Board of Educ. of Community High Sch. 155*, 52

F.3d 156, 159 (7th Cir. 1995) (court properly struck plaintiff's response that consisted of

conclusory affidavit not based on personal knowledge and attached unauthenticated exhibits);

*Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992) (assertion that claimant's

political affiliation was "well known" was conclusory and, without more, could not overcome

defendant's affidavit denying any knowledge of claimant's political affiliation); *Karuzanos v.*

*Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336-338 (7th Cir. 1991) (affidavit containing

speculation is insufficient); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766

F.2d 1007, 1011 (7th Cir. 1985) (conclusory affidavits will not raise genuine issue of material

fact); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989) (affidavit could be considered

because it cited specific facts, rather than mere unsupported conclusions); *Reinke v. O'Connell*,

790 F.2d 850, 851-852 (11th Cir. 1986) (physicians' affidavits stating merely that they were not

guilty of malpractice were conclusory and not sufficient to support motion for summary

judgment).

### b. Conclusory Allegations Without Factual Support Are Not Considered

There are numerous examples of the courts refusing to consider conclusory affidavits and

declarations. *See, e.g., Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d

919, 922-923 (2d Cir. 1985) (conclusory allegations in affidavit have no value when they are

without factual support or supported only by uncorroborated hearsay); *LaRouche v. Webster*, 175

F.R.D. 452, 455 (S.D.N.Y. 1996) (court must disregard ultimate facts and legal conclusions

appearing in affidavits, district court ruled that magistrate judge erred in failing to strike those

portions of affidavit that contained inferences of ultimate facts and legal conclusions); *Drake v.

3M*, 134 F.3d 878, 887 (7th Cir. 1998) (district court properly disregarded portions of affidavit

because affiant's conclusory allegations lacked factual foundation).

### c. Even If Admissible, Plaintiff's "Facts" Require an Evidentiary Hearing

Federal Rule of Civil Procedure 65, which governs the issuance of preliminary

injunctions, does not explicitly require the court to conduct an evidentiary hearing before issuing

an injunction, but it does direct that "[n]o preliminary injunction shall be issued without notice to

the adverse party." In *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511

F.3d 535, 552-553 (6th Cir. 2007), the Court of Appeals interpreted this requirement to "impl[y]

a hearing in which the defendant is given a fair opportunity to oppose the application and to

13

prepare for such opposition." *See County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d

477, 484 (6th Cir. 2002) (quoting *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991)).

*See also Carpenter's Dist. Council v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958) (Rule 65 "contemplates

that the issuance of a preliminary injunction shall be upon notice to the adverse party *and after a

hearing*." (emphasis added)).  However, Sixth Circuit Rule 65 jurisprudence suggests that a

hearing is only required when there are disputed factual issues, and not when the issues are

primarily questions of law.  *See Lexington-Fayette Urban County Gov't v. Bellsouth Telecomm.,

Inc.*, 14 F. App'x 636, 639 (6th Cir. 2001) (unpublished) (Rule 65 "does not require the

presentation of oral testimony . . . particularly . . . when the issues litigated are primarily

questions of law."); *Sentinel Trust Co. v. Namer*, 172 F.3d 873 (6th Cir. 1988) (unpublished

table opinion) (interpreting prior precedent to require an evidentiary hearing "when there is a

disputed issue of fact and the documentary record is insufficient to resolve it"); *Detroit & Toledo

Shore Line R.R. Co. v. Bhd. of Locomotive Firemen & Enginemen*, 357 F.2d 152, 153-54 (6th

Cir. 1966) (finding that, because there was a controversy over the facts, a hearing should have

been held before issuing a preliminary injunction); *Cicci*, 261 F.2d at 8 (finding no hearing to be

required "if there is no dispute between the parties about the facts," but requiring a hearing "if

the allegations of a complaint are denied by a defendant").  *But see County Sec. Agency*, 296 F.3d

at 484 (finding a hearing to be required even though defendant "did not contest the factual basis

underlying the stipulated preliminary injunction" but only "challeng[ed] the legal basis for the

issuance of any future injunction against him").  This approach for determining when an

evidentiary hearing is required finds its best support in *S.E.C. v. G. Weeks Sec., Inc.*, 678 F.2d

649, 651 (6th Cir. 1982).  In *Weeks*, the district court issued two preliminary injunctions, one

prohibiting the defendant from further violating anti-fraud provisions of the securities laws, and

one prohibiting further violations of the registration provisions of the securities laws. On appeal,

it was held that the district court had abused its discretion in issuing the anti-fraud injunction

without first conducting an evidentiary hearing because that injunction "turned on disputed

factual questions." *Id.* at 651. The rationale in *Weeks* is summarized in the rule, initially

announced by the Eleventh Circuit in *McDonald's Corp. v. Robertson*, and which the Sixth

Circuit adopted as its own:

> "[W]here facts are bitterly contested and credibility determinations must be made
> to decide whether injunctive relief should issue, an evidentiary hearing must be
> held. [However,] where material facts are not in dispute, or where facts in dispute
> are not material to the preliminary injunction sought, district courts generally need
> not hold an evidentiary hearing."

147 F.3d 1301, 1312-13 (11th Cir. 1998).

The credibility of Mr. Connelly and his conclusory assertions of irreparable harm are

bitterly contested by RVT. If not rejected outright by the court, Mr. Connelly's averments

should not be summarily accepted as truth forming the basis for extraordinary injunctive relief.

**B. An Injunction Would Cause Immense Harm to RVT**

If injunctive relief is granted and Plaintiff were to be given access to and use of and/or

ownership of the source code and executables, RVT would lose more than its investment. If

injunctive relief is granted, Plaintiff will have successfully manipulated the legal system to

obtain *for free* a product which more than 100,000 man hours and $20 million have been

invested in to develop, and which Defendant RVT successfully bid millions to obtain.

Such an outcome would also moot or nullify the entire case, as Defendant RVT would

immediately lose the exclusivity of its main revenue product, which it has advocated so hard to

protect. This means it would lose control over upgrades available to its main line of products

and the executables could be reverse engineered. RVT would have no way of monitoring

15

whether and how Plaintiff modified, copied, or otherwise exploited its source code.

Accordingly, RVT would sustain immediate and irreparable damages if Plaintiff's requested relief is granted.

### C. An Injunction is not in the Public Interest

Granting mandatory injunctive relief in favor of ABB is not in the public interest. Rather, the opposite is true: the public interest requires that ABB be held to its commitment to arbitrate its dispute with Defendants. *See Summit Training Source, Inc. v. Mastery Technologies Inc.*, 2000 WL 35442327, at *9 (W.D. Mich. June 1, 2000). This is especially true given the "strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

### III. Plaintiff Must Post Bond

In view of the foregoing, if any injunction is to issue (which it should not), Plaintiff must be required to post bond in the amount of the market value of the assets at issue, which RVT believes to be $20 million. Rule 65(c) forbids issuance of preliminary injunctions unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Considering the immediate tremendous negative impact on RVT's business coupled with the ex-parte nature of this relief as against the Braintech entities, who have not even been apprised of this hearing, this Court should require a sizeable bond if it determines such extraordinary relief is appropriate.

### IV. Conclusion

For all the foregoing reasons, RVT respectfully requests that this Court deny Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction; dismiss Plaintiff's

Complaint and compel arbitration of all issues in dispute; and make an award to RVT of its legal fees expended in this matter.

/s/ Geoffrey J. Greeves
Geoffrey J. Greeves
Geoffrey.greeves@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone:  202-663-8000
Facsimile:  202-663-8007
Attorney for Defendant RoboticVISIONTech, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2010, a copy of the foregoing Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction was filed through the Court's electronic filing system (ECF) and that such filing was served electronically by the ECF system on all counsel of record at the email addresses disclosed on the Notice of Electronic Filing receipt.  I hereby certify that I have also served via email the Opposition on Jeff Young, Esq., Counsel for ABB, Inc.

/s/ Geoffrey J. Greeves
Geoffrey J. Greeves
Geoffrey.greeves@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Telephone:  202-663-8000
Facsimile:  202-663-8007
Attorney for Defendant RoboticVISIONTech, LLC